## ASA K. GORMAN V. THE STATE.

On an indictment for unlawful marriage, the jury may presume, from the facts and circumstances of the case, that the first wife was living at the time of the second marriage. There is no artificial rule that requires this to be proved by direct evidence.

Proof that the first wife was living, from five to six months previous to the second marriage, the admission of the defendant that he had two wives, and the failure on his part to offer any rebutting evidence, authorize the jury to presume, that the first wife was living at the time of contracting the second marriage.

APPEAL from Nacogdoches. Tried below before the Hon. A. W. O. Hicks.

This was an indictment for unlawful marriage. The facts are stated in the opinion.

*Thomas J. Jennings,* for the appellant.

*Attorney-General,* for the appellee.

ROBERTS, J.—Both marriages were fully established, as alleged. The first one, with Louisa Shack, in the state of Mississippi, on the 10th of April, 1857; and the second, with Elizabeth Jane Cleaveland, in Nacogdoches county, in this state, on the 1st day of October, 1857. One of the witnesses states, that he saw Gorman and his wife Louisa together, once or twice, in Mississippi, after their marriage, and that he came with witness to this country, the 1st of June, 1857. None of the witnesses had seen Louisa, during a period of at least four months before the second marriage; but a month or two after the second marriage, Gorman confessed that he had two wives, one in Mississippi, and one here.

, The jury having found the defendant guilty, it is now contended that the verdict was unauthorized, because it was not sufficiently proved that Louisa was alive at the date of the se-

cond marriage; that though the admission of Gorman might embrace that fact, it was evidently unknown to him at the time he made it, Mississippi, where she was left, being 300 miles distant; and that, there being no positive or direct testimony of her being alive at the date of the second marriage, the jury were not warranted in presuming that fact, from her being proved to have been alive four or six months before that time; that the presumption of innocence outweighs the presumption of the continuance of life for a year, a month, or a day.

Greenleaf, in treating of this offence, says: "There must also be proof that the first husband, or wife, was living, at the time of the second marriage. And, for this purpose, it is said, that the mere presumption of the continuance of life is not sufficient, without the aid of other circumstances, though seven years have not expired since the last intelligence was had, in regard to the absent person." (3 Greenl. Ev. § 207.) This rule is announced with a caution, by the use of the terms, "*it is said*," as perhaps indicating a want of full assent to its correctness. The case relied on, for its establishment, is Rex v. Twyning, 2 B. & Ald. 386. Chitty and Starkie announce the same rule, upon the same authority. This case came under review in the Court of King's Bench, in a subsequent case, in which the extent of the rules established by that case, was fully discussed, both by the bar and bench, when it was held, that that case did not establish it as a rule of evidence, that a jury was not authorized to presume the continuance of life, unaided by other circumstances, in the establishment of bigamy; and that, however the expressed views of the judges might lead to that conclusion, they would not follow them, but determined directly the contrary, that a jury might be allowed so to presume. (The King v. Inhabitants of Harborne, 2 Ad. & Ellis, 255.) In delivering his opinion in this case, Lord DENMAN, C. J., said: "I must take this opportunity of saying, that nothing can be more absurd than the notion, that there is to be any rigid presumption of law on such questions of fact, without reference to accompanying circumstances; such, for instance, as the age or health of the party.

There can be no such strict presumption of law." WILLIAMS, J., in delivering his opinion, said: "But still the question remains, is there any particular rule established for deciding the fact of the life of a party, on principles unlike those by which other facts are decided? When we are told, that the life must be proved by express evidence, I am at a loss to understand what is meant. There was express evidence,—the party was alive within a month. To be sure, death might have inter-vened; that is possibility against probability, for it is a question of degree. The sessions founded their opinion upon a presumption, which they were entitled to make."

These opinions were delivered in a civil cause, where the rights of the parties depended upon proving a second marriage to be void, by showing the first wife to be alive at that date. There is no intimation that the rule of evidence would have been different in a criminal case. The degree of certainty required, as to the existence of facts in a criminal case, may and should induce a jury to exercise greater caution in basing their action upon such a presumption, than if it were in a civil case. Still it is a presumption, that they should be allowed to weigh, and which should not be excluded from them by any artificial rule of evidence. Had it been shown, that the wife, Louisa, was certainly alive the day before the indictment was found, the presumption would have been violent, and one upon which a jury would not hesitate to act, that her life continued one day, in the absence of everything leading to an opposite conclusion. They might not feel warranted in including the same presumption through the space of a whole year, or even for six months, or three months, unless aided by either affirmative or negative circumstances.

In the case before us, the admission of the defendant is an important circumstance, in two respects. 1st. If she had died, he, above all persons in this state, would have been most likely to have heard of it, and would not have said that, one or two months after the last marriage, which took for granted that she was still living. 2d. The admission takes away from him the

opposing presumption of innocence. He evidently believed, at the time of the second marriage, that his wife was living; and he was warned by the witness not to contract the second marriage; and afterwards warned of his danger when he made the admission. His conduct and expressions show, that he wilfully did that which he believed to be unlawful. The general principle which underlies the presumption in favor of innocence, is, that all men obey, rather than violate, the law. This support he cannot justly claim in this case.

Another circumstance of a negative character, is very important in this connexion. He was indicted in July, 1858, and tried in January, 1859. He must have known of the *primâ facie* case against him, arising from the direct admission made by himself; and had his wife been dead in October, 1857, when he married the second time, he would have made some effort to have shown it, in his defence. We think there is no error presented in the case.

Judgment affirmed.