834            SUPREME COURT OF APPEALS

THE STATE OF WEST VIRGINIA *v.* GOODRICH.

Decided November 2, 1878.

1. In a prosecution for bigamy, the first marriage may be proved by the minister, who solemnized it.

1878.
Special Term.   2. If, when the first marriage named in the indictment was solemnized in a State where the common law was in force, the prisoner was a married man, he does not commit the offense of bigamy, the first marriage named in the indictment being a nullity by the common law.

3. To prove that the prisoner was a married man, when the first marriage named in the indictment mas solemnized, it is proper to permit to go to the jury a paper purporting to be a transcript from the records of a county in the State of Ohio, duly authenticated by the probate judge, whose duty it is to keep such record, and which purported to show the marriage of the prisoner to another woman in that county, in accordance with the law of that State, within two years of the time the first marriage named in the indictment was solemnized; and a paper purporting to be a decree of the court of common pleas of that county, properly authenticated, and which purported to be rendered in a suit brought by the prisoner's Ohio wife for a divorce, the decree offered purporting to be entered a year after the first marriage named in the indictment, and the court on the face of the decree reciting the legal service of the process on the defendant, and decreeing a divorce *a vinculo matrimonii* for the adultery of the prisoner.

4. In such case even if the decree had not been offered in evidence the other paper ought to have been permited to go to the jury, for the presumption of a continuance of life and the presumption of innocence are both presumptions of fact to be acted upon by the jury, and not presumptions of law.

The circuit court of Harrison county, on the 10th day of June, 1878, rendered judgment against Theodore S. Goodrich on an indictment against him for bigamy.

This is a writ of error, granted on the petition of said Goodrich, to the judgment of said court then rendered.

Hon. A. B. Fleming, judge of the second judicial circuit, rendered the judgment complained of.

GREEN, PRESIDENT, furnishes the following statement of the case:

In May, 1878, Theodore S. Goodrich was indicted in the circuit court of Harrison county for bigamy. The indictment alleged, that in November, 1874, in the State of Wisconsin he married Fannie I. Smith, a single woman, and afterwards, while so married and while she was living, in May, 1877, he feloniously married Clara Allen; and afterwards in March, 1878, in Harrison county, West Virginia, he did feloniously cohabit with her, said Clara, as his lawful wife, said Fannie I. being then alive. To this indictment he pleaded not guilty. The jury found him guilty of the felony charged in the indictment, and ascertained his term of imprisonment at three years.

He moved for a new trial, which motion the court overruled; and on June 10, 1878, the court rendered a judgment against him pursuant to the verdict of the jury. During the trial of the case the prisoner took two bills of exceptions. One of them was an exception to the overruling of the prisoner's motion for a new trial, which bill of exceptions sets forth all the facts proven at the trial, that is, that on the 29th day of November, 1874, at Neisville, Clarke county, Wisconsin, the prisoner married, according to the laws of that State, Fannie I. Smith, a single woman, aged about twenty-three years; that they stayed about Neisville a short time and cohabited as husband and wife. The prisoner was proven to have admitted, that on the 30th day of May, 1877, at the town of Mount Pleasant, in the State of Iowa, he

married Clara Allen. And it was further proven, that in the month of March, 1878, the prisoner was for three weeks in Clarksburg, Harrison county, West Virginia, where he was living with said Clara, and cohabiting with her as his wife; and it was further proven that said Fannie I. Smith was then still living.

These were all the facts proven before the jury; but the prisoner offered evidence to prove other facts, which evidence the court refused to permit to go to the jury. And to this action of the court the prisoner also excepted The evidence so offered by him was offered after the evidence offered by the State, as above stated, had been introduced, and consisted of a paper purporting to be a transcript from the records of marriages in Union county, Ohio, intended to prove, that on April 30, 1873, the prisoner had been lawfully married to Sarah Snodgrass in Union county, Ohio. This transcript was in these words:

"STATE OF OHIO, UNION COUNTY, ss.

"I, John B. Coats, judge of the probate court in and for said county, hereby certify, that the following is a true and correct transcript from the record of marriages in this county preserved in this office, where the same is required by law to be kept, to wit:

"Copy—Francis Goodrich and Sarah Snodgrass. License, issued the 30th day of April, 1873, to the above named parties.

"STATE OF OHIO, UNION COUNTY, ss.

"I do hereby certify that Mr. Francis Goodrich and Miss Sarah Snodgrass were joined in marriage by me the 30th day of April, 1873.

"OLIVER KENNEDY, M. G.

"In testimony whereof I have hereunto set my hand, and affixed the seal of said court, at
{ Probate Court, Union County, Ohio. } Maysville this 62d day of May, A. D. 1873.

"JOHN B. COATS,
"Probate Judge."

There was also another paper offered at the same time, purporting to be a certified copy of a "journal entry" of the common pleas court of said Union county, and State of Ohio, intended to prove, that when the prisoner married Fannie I. Smith, his former wife, Sarah, was still living and the lawful wife of the prisoner, and therefore the alleged marriage to Fannie I. Smith was absolutely void; and that afterwards, in May, 1875, the marriage of the prisoner with his former wife, Sarah, was legally dissolved by a court of competent jurisdiction; and that therefore, when he married his last wife, Clara, he then having no lawful wife had a right to marry her, and committed no offense in marrying her, or in cohabiting with her as his wife in West Virginia.

This journal entry was in these words:

"CERTIFIED COPY OF JOURNAL ENTRY.

"THE STATE OF OHIO, UNION COUNTY, ss.

"In the common pleas court, May term, 1875, Journal vol. 9, page 471.

"SARAH C. GOODRICH, Plaintiff, v. FRANCIS GOODRICH, Defendant—*Certified Copy of Journal Entries. Divorce.*

"And now came the said Sarah C. Goodrich, by Carpenter and Predney, her attorneys, and thereupon this cause came on for hearing upon the petition and testimony, and was argued by counsel. On consideration whereof the court doth find, that due notice of the filing and pendency of this petition was given to the said defendant according to law; and the court doth further find, that the said defendant hath been guilty of gross neglect of duty and adultery. It is therefore adjudged and decreed, that the marriage relation heretofore existing between the said parties, be and the same is hereby set aside and wholly annulled, and the said parties wholly released from the obligation of the same. And it is further ordered, that the custody, nurture, education and care of the said Laura E. Goodrich be and the same

is hereby given to the said petitioner; and the said defendant is hereby forever enjoined from interfering with, or disturbing, the said petitioner in the custody, nurture, education and care of the said Laura E. Goodrich. And it is further ordered, that the said complainant pay the costs of this suit.

"THE STATE OF OHIO, UNION COUNTY, SS:.

"I, W. M. Winget, clerk of the common pleas court within and for the said county, and in whose custody the files, journals and records of said court are required by the laws of the State of Ohio to be kept, hereby certify, that the foregoing is taken and copied from the Journal No. 9 of the proceedings of the said court within and for said county, and that said foregoing copy has been compared by me with the original entry on said Journal No. 9; and that the same is a correct transcript thereof.

"In testimony whereof I do hereunto subscribe my name officially, and affix the seal of said { Common Pleas of the / County of Union. } court, at the court house in Maysville, in said county, the 30th day of March A. D. 1878.

"W. M. WINGET, *Clerk.*"

The attorney of the State waived all objections to the manner or form of certifying said transcript and "Journal entry," and admitted, that Francis Goodrich, mentioned in them, was the prisoner at the bar; and the counsel of the prisoner stated, that this was all the proof they had to offer; and thereupon, on motion of the attorney for the State, the court excluded all of said evidence of the prisoner from the jury; and the prisoner, by his counsel, excepted to this action of the court.

To this action of the court, in excluding this evidence and in refusing him a new trial, the prisoner, by his counsel, objected, and his bills of exceptions thereto were made part of the record.

To the judgment of the court, rendered on June 10th, 1878, pursuant to the verdict of the jury, a writ of error and *supersedeas* has been awarded by this court.

*E. W. Patton* and *W. Scott,* for the plaintiff in error, cited the following authorities :

Poynter on Mar, & Div., 13 Law Lib. ch. 10 §141 ; 2 Whart Am. Crim. Law, §2628; 3 Wis. Law Jour. 134; 20 Ohio 3 ; 3 Arch. Crim. Pl. 475 ; Whart. Am. Crim. Law, 755; Const. U. S. Art. IV., §1 ; Code, ch. 130, §19 ; 1 Story Laws U. S. 93; 4 Munf. 241; 6 Leigh 523 ; 7 Leigh 234.

*Robert White,* Attorney General for the State, referred to the following authorities :

Code, ch. 130, §§19, 20 ; 17 Gratt. 582; 21 Gratt. 800; 1 Bish. Mar. & Div. §§529, 530; 1 Rev. Stat. Ohio (Sw. & Cr.) 856 ; Index Same, vol. 2, p. 1756; Sup. Rev. Stat. Ohio (Sw. & Say.) 347, 447 ; Bish. Mar. & Div. §71; 19 Am. Rep., 132, 134, 135; *Id.* 144–148 ; 3 Gratt. 291 ; 9 Gratt. 531 ; 2 Wash. 156 ; 1 Greenl. Ev. §§27, 28, 41, 42 ; 3 Call. 6 ; 1 H. & M. 370, 459 ; 18 Gratt. 53, 801 ; 1 Bouv. L. Dict. 197 ; Code, p. 693, §1 ; *Id.* p. 440; §1.

GREEN PRESIDENT, delivered the opinion of the Court :

The evidence, on which the jury in this case based their verdict of guilty, was sufficient to justify such verdict. It is true, the first marriage charged in the indictment was proved by the minister, who officiated at the marriage; and the second marriage charged in the indictment was only proved by the distinct admission of the prisoner ; and that the authorities elsewhere are comflicting on the question, whether such proof is sufficient in an indictment for bigmay, or whether it is even admissible; but it is settled in Virginia, and in this

1878
Special Term.

The State of
West Virginia
v.
Goodrich.

Syllabus 2.

State, that such evidence is admissible in such a case, and sufficient to justify a conviction. See *Warner* v. *The Commonwealth*, 2 Va. Cas. 95; *O'Neal's Case*. 17 Gratt. 582; *Bird's Case*, 21 Gratt. 800. A new trial ought not therefore, to have been awarded the prisoner, unless the court had excluded from the jury evidence which ought to have been admitted.

The defense, which the prisoner sought to establish by the evidence which the court rejected, was, that he had on the 30th day of April, 1873, in Union county, Ohio, been lawfully married according to the laws of Ohio to Sarah Snodgrass; and that she was still living and this marriage in full force, when he was married on the 29th day of November, 1874, to Francis I. Smith in Wisconsin; that he, the prisoner, being then a married man this marriage to Francis I. Smith was a mere nullity, and absolutely void *ab initio*.

The indictment alleging the offense of the prisoner to be the marrying by the prisoner on May 5, 1877, in Iowa to Clara Allen, while his wife Francis I. Smith was living, it was incumbent on the State to show, that Francis I. Smith was his lawful wife, and the prisoner's defense sought to be established by the evidence rejected by the court was, that Francis I. Smith was never the lawful wife of the prisoner, as he was a married man, when he married her.

If the first marriage laid in the indictment was a nullity, then the second marriage laid in the indictment could not constitute the offense of bigamy; and if the prisoner was a married man, when the first marriage charged in the indictment took place, this marriage was an absolute nullity in Wisconsin, where it was solemnized. the common law being in force there. See East P. C. 466; *Lady Madison's Case*, 1 H. P. C. 693.

It is true, that this defense, sought to be set up by the prisoner, establishes beyond controversy, that he was guilty of bigamy, when on November 29, 1874, he married Francis I. Smith in Wisconsin, his first wife,

Sarah Snodgrass, being then living. His entering into this contract of marriage, which is forbidden by the law, while his former wife was living, is what constitutes the the offense of bigamy ; and this, though his second contract of marriage, made in violation of law, is necessarily a nullity. But though he thus unquestionably, according to his own defense, if it were proven, has been guilty of bigamy, it is not the bigamy for which he was indicted. For the bigamy committed by marrying Francis I. Smith in Wisconsin he could be indicted there, but could not be indicted in this State, as he never cohabited with her in this State. The defense therefore, attempted by the prisoner in this case, was a legitimate defense ; and his evidence offered to sustain it, should have been received by the court, if in its character it was admissible evidence, and if it tended to establish this defense.

The first proposition to be proven in order to make out the proposed defense was, that prior to the prisoner's marrying Francis I. Smith in Wisconsin, on November 29, 1874, he had lawfully married some other woman. And the second proposition to be proven was, that this first wife was living on November 29, 1874. The first proposition the prisoner proposed to prove by a copy from the records of marriages in Union county, Ohio, and which, if admissible as evidence, showed, that on April 3, 1873, a license was issued for the marriage of Francis Goodrich, the prisoner, and Sarah Snodgrass; and that accordingly they were married on that day by Oliver Kennedy, a minister of the gospel. This transcript from the record is authenticated by John B. Coats, the judge of the probate court of Union county, under his hand and under the official seal of the court. The State's attorney waived all objection to the form of this certificate ; and it was made by the person who by the laws of Ohio had the custody of such records. See Swan & Critchfield's Statutes 1214.

Syllabus 3.

By our Code, ch. 4, §13, p. 91, we take judicial notice of the laws statutory, or other, of Ohio, and may consult any book to ascertain them. By these laws a minister of the gospel may, after a license has been granted the parties, solemnize marriages; and he is required to transmit to the probate judge in the county, where the license was issued, a certificate of such marriage, which the probate judge is required to record. See Curwin's Statutes of Ohio, vol. III, pp. 2337-8, and Supplement to the Revised Statutes of Ohio by Swan & Saylor, p. 447.

By our Code, see ch. 130, §20, p. 618, "all records and exemplifications of office books kept in any public office of a State shall be evidence in any court in this State, if attested by the keeper of said records or books, and the seal of his office annexed," &c. The probate judge, as we have seen by the laws of Ohio, is the keeper of the record, or books, in which the law of Ohio requires certificates of marriage to be recorded; and the attorney for the State waived all objection to the form of the certificates. This certificate by the keeper of the record book in which it was recorded by the laws of Ohio, would have been receivable as evidence of this marriage by the common law, independent of our statute. See *Milford* v. *Worcester*, 7 Mass. 48. This certificate tends to prove the marriage of the prisoner with Sarah Snodgrass, on April 30, 1873; and it is authenticated by the signature and seal of office of the person who by the laws of Ohio is the keeper of such record books; and I can see no reason why it should not have been permitted to go in evidence to the jury. If so received, it would have established in the absence of contradictory evidence the marriage according to the laws of Ohio of the prisoner and Sarah Snodgrass on April 30, 1873.

It is insisted, however, by the Attorney General that this evidence of this marriage ought to have been rejected, because it did not even tend to make out the defense proposed by the prisoner, unless it had been followed up by some evidence tending to prove that Sarah

Snodgrass was living on November 29, 1874, when the prisoner married Fannie I. Smith in Wisconsin as alleged in the indictment, as the prior marriage alone to Sarah Snodgrass would not have rendered this Wisconsin marriage void unless she had been then living; and it is further insisted that the prisoner offered no evidence tending to show that Sarah Snodgrass was then living except the copy of the decree of divorce, which it is insisted the court properly rejected. But these positions of the Attorney General are untenable. When the existence of a person is once established by proof, a presumption arises that such person continues to exist or live until the contrary is shown, or till a different presumption is raised. This presumption of life could be repelled by proof or by showing that seven years had elapsed without the parties being heard of. *Hopewell* v. *De Puma*, 2 Camp. 113; *Loving* v. *Steeneman*, 1 Metc. 204; *Doe* v. *Nepean*, 5 B. & Ad. 86.

It is true, if the prisoner had been indicted in Wisconsin for marrying Fannie I. Smith while his first wife, Sarah Snodgrass, was living, the law would have justified the jury in presuming the prisoner's innocence, and therefore that his first wife, Sarah, had died before the 29th of November, 1874, when he married his second wife. So that in such case the presumption of innocence would be in conflict with the presumption of the continuance of life, which would have arisen from proving that Sarah Snodgrass was living April 30, 1873, the time of her marriage as shown by the record. The law in such a case makes no absolute decision between the conflicting presumptions of innocence and life. The presumption of innocence, that is that the first wife was dead, has generally prevailed, but not always. These presumptions of innocence and life in such cases are regarded as presumptions of fact, to be considered and weighed by the jury, and not presumptions of law. See *Lopsley* v. *Greerson*, 1 House of Lords Cases, 498; *Sneed*

v. *Ewing*, 5 J. J. Mar. 460–492; *Straw* v. *Peck*, 1 Hill. (N. Y.) 270; *Yates* v. *Houston*, 3 Texas, 433.

In the case of *Reg* v. *Lumley*, L. R. 1 C. C. 196–198, cited in 1 Bishop on Marriage and Divorce, § 454, Lush, judge, said : "If, for example, it were proved that she was in good health the day preceding the second marriage, the inference would be strong, almost irresistible, that she was living on the latter day ; and the jury would in all probability find that she was so living. If on the other hand it was proven that she was then in a dying condition, and nothing further was proven, they would probably decline to draw that inference. Thus the question is entirely for the jury. The law makes no presumption either way."

If therefore this had been an indictment for bigamy against the prisoner for marrying Francis I. Smith in Wisconsin November 29, 1874, while his first wife, Sarah Snodgrass, was living, the court would have let the evidence that Sarah Snodgrass was living on April 30, 1873, go to the jury for their consideration, though no other evidence had been offered on the question whether she was living or dead at the time of the second marriage. The jury would probably in such a case have found that she was dead at that time. But the court ought to have submitted it to their consideration as a question of fact.

It seems much more obvious that on the trial of an indictment, as in the case before us, on the charge that the prisoner married Clara Allen in Iowa on May 30, 1877, his wife, Fannie I. Smith, being then alive, it was proper to permit evidence to go to the jury that a former wife, Sarah Snodgrass, was living on April 30, 1873. For the prisoner being presumed to have been innocent in marrying Clara Allen would give rise to the presumption that his marriage to Fannie I. Smith was void, that is to the presumption that Sarah Snodgrass was living on November 29, 1874, when he married Fannie J. Smith. Thus two presumptions of innocence would arise, the one from his marrying Fannie I. Smith, that

Sarah Snodgrass was then, November 29, 1874, dead, and another from his marrying Clara Allen that Sarah Snodgrass was living on November 29, 1874, when he married Fannie I. Smith. And these presumptions offsetting each other, the presumption of life arising from the proof that Sarah Snodgrass was living on April 30, 1873, the date of her marriage, would probably have led the jury to the conclusion that she was living on November 29, 1874. And at any rate this evidence ought to have been permitted to go the jury. The presumption of innocence resulting from his Wisconsin marriage, which would tend to the conclusion that his Ohio bride was then dead, is repelled by the presumption of innocence resulting from his Iowa marriage which would tend to the conclusion that his Ohio bride was living when he married in Wisconsin.

The case of *Gorman* v. *The State,* 23 Texas, 646, 648, 649, is an illustration of how the presumption of innocence leading to the conclusion that the first wife was dead may be destroyed by another presumption. In this case, it being proven that the husband believed his first wife was living when he married his second wife, the court held that this belief, whether founded on knowledge or not, showed the willingness of the accused to violate the law, and therefore took away from him the opposing presumption of innocence.

In the case before us the prisoner's willingness to violate the law is clearly shown, and therefore the presumption that he was not violating the law when he married Fannie I. Smith is taken away, and being so taken away it seems to me that there will remain the original presumption that Sarah Snodgrass was living on November 29, 1874, arising from the fact that it was proven she was living on May 30, 1873; but, be this as it may, it is clear that this evidence ought to have been allowed by the court to be submitted to the jury.

Our next enquiry is: Did the circuit court err in refusing to permit to go to the jury the copy of the divorce

of the prisoner and Sarah Snodgrass, rendered by the court of common pleas of Union county, Ohio, at the May term 1875? If the evidence of the marriage had been permitted to go to the jury, as it should have been, this decree would have shown that on November 29, 1874, when the prisoner married Fannie I. Smith, he was the husband of Sarah Snodgrass. For he married her on May 30, 1873, and was divorced from her May, 1875. And if this fact had been established, the prisoner would have been entitled to an acquittal on this indictment, as his marriage to Fannie I. Smith would have been utterly void.

By the laws of Ohio the court of common pleas of Union county is a court of general jurisdiction, (Swan & Critchfield's Statutes, 386, 1196,) and may grant divorces (Swan & Critchfield's Statutes, 509); and among the causes for which such court may grant a divorce *a vinculo matrimonii* are adultery and gross neglect of duty. See Revised Statutes of Ohio (Curwin) vol. 3, p. 2168. The decree, a copy of which was offered in evidence, on its face showed that the court had jurisdiction of the subject-matter and also of the parties, for it recites that the plaintiff, Sarah C. Goodrich, appeared by her attorneys, and that due notice had been given the defendant, Francis Goodrich, and further that the evidence proved that he had been guilty of gross neglect of duty and of adultery. It is true it does not affirmatively appear positively where this neglect of duty and adultery took place for which this decree of divorce was rendered. It was decided by the Supreme Court of Appeals of the United States in *Cheever* v. *Wilson*, 9 Wall. 124, that the validity of a decree of divorce is in no manner affected by the fact that the marriage took place in another State, and the adultery or other cause of divorce also took place there, and the husband never resided in the State where the divorce was granted, it being sufficient that the wife, who seeks the divorce, has subsequently to the marriage and to the adultery of her husband, removed

to the State before whose courts she seeks a divorce, and actually acquired a residence therein.

This decision cannot in my judgment be regarded as sound to the full extent to which it goes; and it is inconsistent with the decisions of several highly respectable State courts. Thus in *Borden* v. *Fitch*, 15 Johns. 141, where a man was married in Connecticut, and his wife obtained a divorce from him *a mensa et thoro* to continue during her pleasure, she continued to reside in Connecticut, but her husband moved to Vermont, and there obtained a divorce *a vinculo matrimonii* without any personal service of notice on her. The Supreme Court of New York held this decree of divorce was a nullity. A similar decision was rendered in the case of *The Commonwealth* v. *Blood*, 97 Mass. 538.

The true position is, I think, that a State court, where the parties married and resided, and one of them continues to reside there, though one of them deserts the other and removes to another State, may grant a divorce, though the grounds of the divorce, such as adultery, may have occurred outside of the State. If, however, after the marriage both parties move to another State, and one of them then there commits adultery, and afterwards the other again removes to the State where the parties were married, in such case it is doubtful whether a divorce could be granted by the courts of the State in which the parties were married. See *Prosser* v. *Warner* 47 Ver. 467, 19 American R. p. 132.

Regarding this as law, the court of common pleas of Ohio appears to have had jurisdiction to grant the divorce. The parties were married in that county and must be presumed to have resided there, and the wife to have continued to reside there, as that court, which is one of record and of general jurisdiction, took cognizance of the suit of the wife for a divorce. The husband had notice of the pendency of this suit; and though it is shown that he subsequently removed to Wisconsin, yet this would not deprive the courts of Ohio of juris-

diction of such a suit, even though the adultery, for which the divorce was granted, took place in Wisconsin. A decree of divorce is a judgment *in rem* and as such is binding, so far as it fixes the *status* of the parties, on all the world; but it is binding on others no further than this. If the law of Ohio had authorized a divorce for no other cause than adultery, and this decree had found that adultery had been proven, which the court must have found before it could render such a decree, still others, though bound by the decree so far as it fixed the status of the parties as no longer that of husband and wife, yet the fact that adultery had been committed would not be regarded as established or proven by this decree in any controversy between other parties. So the granting of letters of administration is a judgment *in rem* and as such fixes the status of the administrator as to all the world; and he has by reason thereof a right to collect the debts of the party of whom he is thus administrator, and payment of said debts would be valid, even though it turned out that the party assumed to be intestate was not dead; but such letters of administration prove nothing else against other parties; they do not prove the death of the party assumed to have died intestate in any controversy between third parties. See *Carroll* v. *Carroll*, 60 N. Y. 121, 19 American R. p. 144.

It may be sometimes necessary, where a judgment or decree is the foundation of a suit, to produce a copy of the whole record or of the bill and answer to show clearly the meaning of the decree and that the court had jurisdiction of the subject-matter and of the parties; but when a judgment or decree is introduced merely to show that judgment or decree was rendered, as a collateral fact in some suit not based on such judgment or decree, it is only necessary to produce a copy of the judgment or decree and no other part of the record, provided it appears in any manner that the court rendering it had jurisdiction of the subject-matter and parties, that is, provided it is really what it purports to be, a judgment

or decree, and not a mere nullity. When the judgment or decree is used only to prove its existence as a collateral fact, it may be used as evidence thereof in a suit between other parties than those to the judgment or decree. In such case it is never considered *res inter alios acta*. It is the only proper legal evidence of itself, and is conclusive evidence of the fact of the rendition of the judgment or decree and of the legal consequences resulting from that fact, whoever may be the parties to the suit in which it is offered in evidence. See Greenleaf on Evidence, vol. 1, § 538, p. 575 of 5th edition. The decree of the court of common pleas of Union county, Ohio, was offered simply to prove the existence of such a decree; and it has been seen it was what it purported to be, a decree of a court having jurisdiction of the parties and the cause, and it ought therefore to have been received. Its only effect, so far as this case is concerned, was to prove that the relation of husband and wife existed between the parties to that suit up to the rendition of this decree, and therefore to a period of time subsequent to the Wisconsin marriage. It was therefore entirely immaterial, whether the proceedings in that cause were regular or irregular, and whether this decree ought to have been set aside by the Ohio courts or disregarded as a good divorce by the courts of other States. If it had been afterwards actually set aside, it would have availed the defendant in the case before us as effectually as if it were held good and remained in full force. It was not used to show the divorce, but simply to show that up to that time the parties to that cause were husband and wife. And this furnishes an additional reason for not requiring anything more than the decree to be produced. It establishes the fact that the parties to the cause were up to the date of that decree husband and wife as effectually, as the whole copy of this record could have done. This decree is authenticated by the clerk of the court which rendered it, and is under the seal of the court, and the State's attorney waived all

objections to the manner or form of the certifying of this decree. It ought therefore to have been permitted by the circuit court to have gone to the jury. And because of this failure to permit the transcript of the record of the marriage and the copy of this decree to go in evidence to the jury the circuit court ought to have set aside the verdict of the jury and awarded a new trial.

The judgment therefore of the circuit court, of June 10, 1878, must be reversed, set aside and annulled; and this Court proceeding to render such judgment as the circuit court ought to have rendered doth set aside the verdict of the jury in this case, and doth remand the case to the circuit court of Harrison county, with directions to proceed in the manner prescribed by law to cause another jury duly qualified to come and to say whether the said Theodore F. Goodrich be guilty of the felony wherewith he stands accused, or not guilty, and further to proceed according to the principles settled in this written opinion as the law requires.

THE OTHER JUDGES CONCURRED.

JUDGMENT REVERSED.   CAUSE REMANDED.