## CHARLES J. PONTIER *vs.* THE STATE OF MARYLAND.

*Criminal Law—No Plea in Abatement After Plea in Bar Without Leave of the Court—Qualification of Grand Jurors—Admissibility of Evidence in Trial for Bigamy—Remarks of Trial Court in Ruling on Evidence—Certificate as to Non-Existence of Marriage License.*

After a defendant has pleaded in bar to an indictment for a felony he cannot plead in abatement, unless the Court grants leave to withdraw plea in bar and plead to the jurisdiction.

An objection to the qualification of the grand jurors by whom an indictment was found must be raised by a motion to quash or by a plea in abatement, before pleading in bar.

Code, Art. 51, sec. 5, enacts that, "No person shall be selected to serve as a juror in any Court where he hath any matter of fact depending for trial at the same Court he is selected to serve in, and no person having such matter of fact depending for trial shall be admitted as a qualified juror between party and party during the sitting of the Court in which

such matter of fact shall be or expected to be tried, and such disqualifi-
cation shall be allowed as a good cause for challenge of any juror, but
no verdict of a jury shall therefor be set aside or judgment thereon
stayed, arrested or reversed." *Held*, that this provision relates to the
selection of petit jurors and not to that of grand jurors.

Upon the trial of an indictment for bigamy, defendant's wife, who was a
witness for the prosecution, testified that when the defendant was on
trial for larceny in a certain Court, he swore that she was his wife, and
afterwards when charged in the same Court with cruelty to one Helen
R., swore that the witness was not his wife; and that he was thereupon
indicted for perjury and pleaded guilty. The defendant moved to
strike from the record the testimony relating to the indictment for per-
jury, and plea of guilty. *Held*, that since this testimony had been
given without any objection on the part of the defendant, at the time it
was offered, the jury was entitled to consider it.

A duly certified copy of a decree of an equity Court of this State by which
the prosecutrix was divorced from the defendant after his alleged second
marriage is competent evidence to prove his first marriage in a trial for
bigamy, when the identity of the parties is established.

The prosecutrix in a trial for bigamy, testified that she and the defend-
ant were married in Camden, New Jersey, in 1899. The defendant put
in evidence the statute law of New Jersey, which provides that no mar-
riage shall take place in that State between non-residents unless a
license therefor has been previously obtained. Defendant then offered
in evidence a certificate of the clerk of the Camden City Court to the
effect that no entry appeared on the record of marriage licenses from
the year 1897 to the present date of the issue of a license to the defend-
ant and prosecutrix. The trial Court refused to admit this certificate,
and read aloud, in the presence of the jury, a provision in the statute
law of New Jersey, to the effect that no marriage otherwise lawful,
shall be deemed invalid by reason of the failure to take out a license.
The trial Court also said, "As to the validity of said alleged marriage,
it is immaterial whether a license was issued or not, the only effect of a
license not having been issued, would be to render the minister per-
forming the ceremony liable to the punishment prescribed by the Act."
*Held*, that the proffered evidence was not admissible, for the reason
given in the statement of the trial Judge, and that this statement did not
infringe upon the rights of the jury as judges of the law in criminal
cases, since it related to the admissibility of the evidence.

When the prosecuting witness in a trial for bigamy has testified that she
was married to the defendant in Camden, New Jersey, in 1899, a cer-
tificate of the clerk of the city of Camden is not admissible in evidence,
which sets forth that he was the keeper of the statistics and record of
marriages performed there, that the laws of that State require the per-
son performing a marriage to make a return thereof to his office, that
he had examined the marriage records of his office and could find no

return of a marriage between defendant and prosecutrix and he knew of no minister by the name of Blake, and that his name did not appear on the records of that office, or in the city directory for the year 1899.

*Decided February 26th, 1908.*

Appeal from the Circuit Court for Harford County (VAN BIBBER, J.)

The cause was argued before BOYD, C. J., BRISCOE, PEARCE, SCHMUCKER, BURKE, THOMAS and WORTHINGTON, JJ.

*J. Thos. C. Hopkins* and *Harry S. Carver*, for the appellant.

*Isaac Lobe Straus, Attorney General,* (with whom was *J. Royston Stifler, State's Attorney* for Harford County, on the brief), for the appellee.

SCHMUCKER, J., delivered the opinion of the Court.

The appellant was indicted for bigamy, under section 19 of Article 27 of the Code of Public General Laws at the September Term, 1907, of the Circuit Court for Harford County. He was convicted of the offense charged at the same term and having been sentenced to five years in the penitentiary he took the present appeal.

The indictment charges that Charles J. Pontier married Mary Paul Pontier in the State of New Jersey on the 18th of August, 1899, and that on the 22nd of April, 1906, while she was alive and he was still her husband he married another woman called in the indictment Helen R. Pontier in Harford County, Maryland. On being arraigned on September 12th, the prisoner pleaded "not guilty" to the indictment and traversed before the country. On September 19th he withdrew his plea of not guilty and filed four pleas in abatement to which the State demurred and the demurrer was sustained. The prisoner thereupon renewed his plea of not guilty and again traversed before the country and went to trial with the result already mentioned.

The record contains five bills of exceptions. The first exception was taken to the Court's refusal to sustain the

defendant's pleas in abatement, all of which asserted the invalidity of the indictment on the ground of the alleged disqualification of Isaac S. Lee, who was drawn and served as one of the grand jurors during the said September Term, because during that time he was plaintiff in a suit pending for trial on the law side of the Circuit Court.

The demurrer to the pleas in abatement was properly sustained for several reasons. In the first place the prisoner, having pleaded not guilty and traversed before the country, was not entitled to withdraw his plea in bar and file the pleas in abatement without leave of the Court which the record does not show that he asked for or obtained. Bigamy is a felony in this State (*Barber* v. *State*, 50 Md. 161), and in *Cooper* v. *The State*, 64 Md. 44, our predecessors said: "The general rule undoubtedly is, that after pleading in bar to a felony, it is too late to plead in abatement, the withdrawal of such a plea being a matter of favor or discretion with the Court. 'When the defendant has a matter to plead in abatement, the proper time to introduce it is before he pleads to the felony. But there are instances of his being permitted as a matter of favor after the plea of not guilty has been recorded, to withdraw it and plead to the jurisdiction.' 1 *Chitty Crim. Law*, 425. 'Without leave of the Court which is granted only in very strong cases the plea of not guilty cannot be withdrawn to let in a plea of abatement.'" *Wharton's Crim. Pl. & Pr.*, sec. 426; 1 *Bishop Crim. Proc.*, sec. 756; *Mills* v. *State*, 76 Md. 278. An objection to the qualification of grand jurors, or to the mode of summoning or empanelling them, must be made by a motion to quash or by a plea in abatement before pleading in bar. *United States* v. *Gale*, 109 U. S. 65.

None of the pleas in abatement now before us allege that the rights of the defendant have been prejudiced by the presence upon the grand jury of the alleged disqualified juror and it has repeatedly been held that although there may be technical objections to the proceedings for the selection and summoning of grand jurors, unless they have prejudiced the accused the Court will not set them aside. *State* v. *Glasgow*,

59 Md. 212–13; *Mills* v. *State, supra;* U. S. v. *Reed,* 2 Blatchf. 435; *State* v. *Keating,* 59 Md. 209; *State* v. *McNay,* 100 Md. 632.

Turning now from these somewhat technical propositions we will consider the true character and purpose of the provisions of the Code, touching the selection of jurors, which the traverser contends were violated in the formation of the grand jury which presented and indicted him.

Section 5 of Article 51 of the Code of Public General Laws provides as follows:

"No person shall be selected to serve as a juror in any Court where he hath any matter of fact depending for trial at the same Court he is selected to serve in, and no person having such matter of fact depending for trial shall be admitted as a qualified juror between party and party during the sitting of the Court in which such matter of fact shall be or expected to be tried, and such disqualification shall be allowed as a good cause for challenge of any juror, but no verdict of a jury shall therefor be set aside or judgment thereon stayed, arrested or reversed."

Section 11, of the same Article provides that—

"The name of no person disqualified or exempted by existing law from serving as a juror, or whom by existing law the Sheriff is forbidden to summon as such, shall be selected and placed upon the panel or list from which the drawing is to be made as directed by this article; nor shall any person be drawn and summoned to two successive terms of Court; but the selection or drawing of any person disqualified as a juror under this article shall not invalidate the drawing or selection, but such error may be corrected by drawing another person from the box in place of the person improperly selected or drawn; and the said Court shall have full power and authority to coerce the attendance of jurors drawn and summoned under this article, and to punish by fine or imprisonment, or both, for any default or contempt committed in disregarding such summons."

The provisions of section 5, do not in our opinion refer to

grand jurors but to petit jurors.    This we think is apparent
from the forms of expression there used to designate the juror
referred to, such as, "a juror *in any Court*," a qualified "juror
*between party and party*" "*cause for challenge of any juror*,"
which apply with accuracy to a petit juror but not to a grand
juror; as does also the statement that no *verdict* of a jury shall
be set aside or reversed because of the presence thereon of a
juror of the character therein mentioned.    This view is
strengthened by the fact that the original statutes of which
section 5 is a codification are the Act of 1715, ch. 37, sec. 9,
in which the person having a suit pending in the same Court
is declared to be disqualified to serve as a "*petit juror*" and
the Act of 1778, ch. 21, secs. 2 and 3, in which it is provided
that no verdict or judgment shall be stayed, arrested or re-
versed because "*any juror who tried the cause* had a matter of
fact depending for trial as aforesaid."    A very similar pro-
vision found in a North Carolina statute was held, in *State* v.
*Oldham*, 1 Haywood 451, to relate only to petit jurors and
not to grand jurors.    We find no error on the part of the
learned Judge below in sustaining the demurrer to the pleas
in abatement.   .

Nor do we find any reversible error in the rulings which
form the basis of the second bill of exceptions.    The defend-
ant's wife, Mary Paul Pontier, having testified for the State
that he, when on trial for larceny in the Criminal Court of
Baltimore City, swore that she was his wife and that he sub-
sequently swore that she was not his wife when charged in the
same Court with cruelty, &c., to Helen R. Pontier, proceeded
further to say that he was thereupon indicted for perjury and
pleaded guilty to the indictment and that she, the witness,
subsequently saw him in the Baltimore City jail.    At that
point the defendant objected to the testimony relative to his
alleged indictment for perjury and his pleading guilty thereto,
and moved that the same be stricken from the record but the
Court overruled the objection and refused the motion and the
defendant excepted.    This testimony having gone in without
objection the jury were entitled to consider it.    *Slingluff* v.

*Builders Supply Co.*, 89 Md. 562; *Struth* v. *Decker*, 100 Md. 375; *State* v. *Dick, ante* p. 11; *Lamb* v. *Taylor,* 67 Md. 94. Even if there was error in overruling the motion to strike out this evidence as to the defendant's pleading guilty to a charge of perjury in swearing that Mary Paul Pontier was not his wife, he was not injured by it as she had circumstantially testified to their marriage at Camdem, New Jersey, on August 18th, 1899, being then non-residents of that State and that they have afterwards lived together at different places, and there was other evidence corroborating the statement that they had been married.

The State then offered in evidence a duly certified copy of a decree of Circuit Court No. 2 of Baltimore City of September 17th, 1907, divorcing Mary Paul Pontier *a vinculo matrimonii* from the defendant accompanied by a certified copy of the docket entries in the case in which the decree was passed. The defendant objected to this evidence but the Court overruled his objection and allowed the certificate to be put in evidence to which ruling of the Court the defendant took his third exception. The copy of this decree and the docket entries were certified in accordance with the requirements of sec. 64 of Art. 35 of the Code which provides that copies of judgments or decrees rendered by any Court of record of this state certified by the Clerk under the seal of the Court with the docket entries shall be admissible evidence in any other Court in this State to prove the recovery of such judgment or decree. They were therefore admissible in evidence if pertinent to the issue. The decree of divorce obtained by the lawful wife against the defendant after the alleged second marriage, there being evidence in the case of the identity of the parties, was competent evidence as tending to prove their marriage. 4 *Elliott on Evidence,* sec. 2862; 5 *Cyc.,* 701; *Halbrook* v. *State,* 34 Ark. 511; *State* v. *Goodrich,* 14 W. Va. 834. The decree was also evidence to show that the witness had been divorced from the defendant. It was properly admitted in evidence.

The defendant at the trial put in evidence the statutes of

the State of New Jersey for the year 1897 and read therefrom chapter 193 concerning marriage licenses which provides in substance that no marriage shall take place in that State between non-residents thereof without a license previously obtained and imposes a penalty upon ministers performing such marriages, but declares in sec. 13 that no marriage otherwise lawful shall be deemed invalid by reason of a failure to take out the license. He then offered in evidence a certificate of the Clerk of the Camden County Court which stated that he was the custodian of the record of marriage licenses and that no entry appeared thereon from the year 1897 to the present date of the issue of a license to parties by the names of Charles J. Pontier and Mary V. Paul. The State objected to the admission of the certificate and the Court sustained the objection. In passing upon the admissibility of the evidence the Court in the presence of the jury read aloud section 13 of the said Act and said, "As to the validity of said alleged marriage it is immaterial whether a license was issued or not, the only effect of a license not having been issued would be to render the minister performing the ceremony liable to the punishment prescribed by the Act." The defendant excepted to the Court's exclusion of the evidence and also to his reading aloud sec. 13 of the Act and his remarks in reference thereto in the presence and hearing of the jury. The action of the Court below in both respects was entirely proper. The certificate was clearly inadmissible for the reason given by the Court and his statement, of the grounds of his ruling on the evidence and reading of the sec. 13 on which the ruling was predicated, in the course of passing upon the evidence constituted no infringement upon the province of the jury who under our system of criminal justice are judges of both law and fact. The remarks of the Judge were not addressed to the jury nor made as a charge to them, nor did they relate to the substantive law defining the crime, with which the traverser was charged. They related solely to the admissibility of the clerk's certificate as evidence and to the law bearing upon that subject.

The fifth exception was to the Circuit Court's refusal to admit in evidence a certificate under the Act of Congress of the Clerk of the City of Camden, Camden County, New Jersey, which certified that he was the keeper of the Record of Vital Statistics in said city including the record of marriages performed there, that the laws of the State require the official performing a marriage to make a return thereof to his office, that he had examined the marriage records of the office from 1894 to 1904 and could find no return between those years of a marriage between Charles J. Pontier and Mary V. Paul, and that he knew of no minister by the name of Blake and that his name did not appear on the records of that office or in the city directory for the year 1899. There was no error in refusing to admit this certificate. It was not evidence for any purpose. It was not an authenticated copy of any public record at all, but merely a statement by the clerk of his own conclusions from an examination of records alleged to be in his custody. It did not even profess to state the substance or contents of the record but was an attempted certification as to the facts not appearing of record. A copy of the record itself must be produced so that the tribunal before which it is offered in evidence may see what it does and does not contain. Oral testimony under oath of a search made of public records and its results is sometimes admitted to show the non-appearance thereon of certain entries or facts, but a mere negative certificate of the kind offered in this case is not admissible for that purpose. 17 *Cyc.*, 337–8; *Elliott on Evidence*, vol. 2, sec. 1355.

Finding no reversible error in any of the rulings of the Circuit Court we will affirm the judgment appealed from.

*Judgment affirmed with costs.*