# LLOYD *v.* STATE

(Three Appeals in One Record)
[No. 165, September Term, 1958.]

*Decided March 18, 1959.*

The cause was argued before HENDERSON, HAMMOND, PRESCOTT and HORNEY, JJ., and KEATING, J., Associate Judge of the Second Judicial Circuit, specially assigned.

*Morris Lee Kaplan* for the appellant.

*Joseph S. Kaufman, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General, J. Harold Grady, State's Attorney for Baltimore City,* and *Preston A. Pairo, Jr., Assistant State's Attorney,* on the brief, for the appellee.

HORNEY, J., delivered the opinion of the Court.

This is a delayed appeal—made possible by the ruling of this Court in *Lloyd v. Warden* [217 Md. 667, 143 A. 2d 483 (1958)] to the effect that the lower court should determine whether the appellant was impecunious, and by the subsequent finding of that court that he was in fact an indigent defendant—from the judgments and sentences entered by the Criminal Court of Baltimore on three separate verdicts by a jury that Andrew J. Lloyd (the defendant or husband) was guilty of assault and battery on two persons—one of whom was his wife and the other a friend of the wife—and of receiving stolen property. On this strange combination of offenses, the trial court sentenced the defendant to eighteen months in the Penitentiary for assault and battery on his wife, to three months for assault and battery on the friend of the wife, and to three years for receiving stolen property, the sentences to run consecutively.

With respect to the assaults, there was testimony that on September 1, 1956, Doris Lloyd (the wife) telephoned Daisy Egan (the friend) and was informed that the defendant, from whom she was separated, was at the home of the friend and wanted to talk to her. Although the wife was somewhat apprehensive about meeting the defendant because she was scared of him, she went to see him on the assurance of her friend that nothing would happen. When the wife arrived the defendant came out of the house and grabbed the wife who tried to pull away from him. When the friend and an-

other person came out of the house to intervene, the defendant struck the friend with his open hand and knocked her off the steps into the shrubbery. During this episode the wife broke away and ran into the house, but was followed by the defendant with a revolver in his hand. In the house, the wife tried to get away again but the defendant, with the revolver in one hand, beat her with the other. He also picked up a heavy object and swung it but missed striking her. He then bounced her against the wall several times and "blood flew all over the place." In this one-sided fracas the wife received a black eye, broken teeth and several bruises on her body. Finally, the defendant returned to the front of the house and his wife fled out the back door. The defendant testified that he met his wife on the sidewalk, and that when she drew away from him an argument ensued. He denied beating her or threatening her with the revolver. He admitted he tried to slap her but claimed he missed.

With respect to the charge of receiving stolen property, there was evidence that a home in Catonsville was robbed on June 26, 1955, and that certain silverware, luggage and money had been stolen therefrom. Although an attempt had been made to remove the engraved initials, the owner of the silverware was able to identify it. The defendant claimed he received the silverware from his brother-in-law and that it had belonged to his mother-in-law before her death, but on cross-examination admitted he had never seen it in her home. On another occasion when he was asked where he had obtained the silverware he denied ever having seen it before. The silverware, which was left at the home of another person (hereinafter referred to as the "bailee") by the defendant for safekeeping while he moved from one barbershop to another, was subsequently turned over to the police by the bailee. When recovered the initials on part of the silverware had been partially removed by the use of an electric drill. The wife testified the silverware never belonged to her mother and that it had never been in the home occupied by the wife and her husband before they separated. During the investigation the police also found certain lockpicks, files, electric drills and other tools which had been in the possession of the defendant.

He claimed he used them in his trade as a locksmith, but there was no proof that he had ever engaged in a trade other than that of a barber.

The defendant assigns as reversible error (i) the remarks made by the trial court to counsel in the presence of the jury at the beginning of the State's case; (ii) certain rulings on the evidence; (iii) the refusal of the court to grant his motion for a directed verdict; (iv) the court's instructions to the jury; and (v) the excessiveness of one of the sentences.

(i)

The court's remarks were not so prejudicial as to deny the defendant a fair trial. After the first witness for the State had been sworn, but before she began to testify, the trial court —obviously because of some extravagant remarks made during the opening statements—proceeded to call the attention of counsel to the nature of the offenses charged in the several indictments, and briefly outlined the testimony generally required to prove charges of simple assault and battery. And, in so doing, he indicated that the testimony as to the assaults would be limited to what transpired on the date alleged in the indictments and concluded by saying that proof or disproof of the several charges, including the charge of receiving stolen property, did not require a showing of the relationships which existed between the defendant and the prosecuting witnesses prior to the date of the alleged assaults. The defendant "disagreed" with what had been said, but he did not move for a mistrial or even request the court to instruct the jury to disregard the remarks he now claims were prejudicial. See *Daniels v. State,* 213 Md. 90, 131 A. 2d 267 (1957); *Bryant v. State,* 207 Md. 565, 115 A. 2d 502 (1955). While it might have been better had the court reserved its remarks until a later stage of the proceeding or until counsel attempted to introduce in evidence facts and circumstances which either were not relevant or pertinent to the particular issue then before the court, we think it is clear that the remarks did not constitute reversible error. The remarks, relating as they did to the admissibility of anticipated evidence, did not infringe upon the rights of the jury

as judges of the law. *Pontier v. State,* 107 Md. 384, 68 A. 1059 (1908).

(ii)

The trial court did not commit error in any of its rulings on the evidence. The testimony showed that the defendant held the revolver when he assaulted his wife. The probability that the defendant could have used it, either to shoot his wife or "pistol-whip" her with it, was enough to make it admissible in evidence. See *Edwards v. State,* 194 Md. 387, 402, 71 A. 2d 487 (1950). Cf. *Hayes v. State,* 211 Md. 111, 126 A. 2d 576 (1956).

The refusal of the trial court to permit the defendant to cross-examine witnesses for the State as to the alleged adultery of the wife and as to a police investigation of her alleged larcenies and previous behavior was not improper. Generally, unless there is a plain error, the ruling of the trial court—with respect to the range of cross-examination of a prosecuting witness—will be left to the discretion of the trial judge and will not be disturbed on appeal. *Apple v. State,* 190 Md. 661, 59 A. 2d 509 (1948).

Nor was it improper for the trial court to refuse to allow the defendant to testify as to "some trouble [his wife] was in." On this appeal the defendant intimates that the "trouble" he wanted to testify to concerned the pregnancy of his wife. There was no evidence that the wife was pregnant. Even if she were, her condition would have been collateral to the issue of the guilt or innocence of the defendant and was clearly not admissible. And the same was true with respect to the testimony of other witnesses the defendant proffered as to previous arguments between the defendant and his wife and as to an alleged relationship (whatever that may mean) between the wife and her girl friend. As to both questions we think there was no prejudicial error.

(iii)

There was an abundance of clear and convincing evidence that the defendant assaulted and beat his wife as well as her friend. Even the defendant admitted that he attempted to slap his wife though he denied having beat her. There was

also testimony by a disinterested eye witness, which fully corroborated the prosecuting witnesses. There is, therefore, no doubt that the evidence fully supported the verdicts of guilty of the assaults. Cf. *Heath v. State,* 198 Md. 455, 85 A. 2d 43 (1951).

There was also sufficient evidence to sustain the conviction of receiving stolen property. Proof of *receiving* is established when it is shown that the defendant, with a dishonest intent, receives stolen property from another, knowing it to have been stolen. It was shown that the silverware was stolen from its owner, who readily identified it. The defendant, although denying that he had ever seen it before, had previously admitted that he had received it from his brother-in-law, claiming, however, that it had been a part of the property of his deceased mother-in-law. But it was also shown that the silverware had never been in the possession of the mother-in-law or in the home of the defendant and his wife. It was recovered from the home of another woman, who stated that she had received it from the defendant for safekeeping. In the meantime an attempt had been made to remove the initials engraved on the silverware. Since guilty knowledge and a dishonest intent, may be gathered from circumstantial evidence, or inferences therefrom, we think the evidence produced was enough for the jury to legitimately infer, as it must have done, that the defendant knew or could have reasonably suspected from the circumstances that the silverware had been stolen. *Henze v. State,* 154 Md. 332, 140 A. 218 (1928) ; *Jordan v. State,* 219 Md. 36, 148 A. 2d 292 (1959). As was pointed out in *Polansky v. State,* 205 Md. 362, 109 A. 2d 52 (1954), manual possession is not necessary to constitute receiving. The refusal of the trial court to grant the motion for an instructed verdict of acquittal on any of the charges was proper.

### (iv)

We find no reversible errors in the court's instructions. The reference in the charge to the possession of the revolver was not overemphasized as claimed. Indeed it appears that the reference thereto was quite appropriate under the cir-

cumstances in this case. Certainly the charge was not prejudicial to the defendant since it merely pointed out that he had the revolver and that, if he threatened the prosecuting witnesses, or either of them, with it, that fact would be sufficient evidence of an assault. The instruction was in conformity with the law of this State. See Hochheimer, *Crimes and Criminal Procedure* §§ 253, 254 (2d ed., 1904); Clark and Marshall, *Crimes* § 10.15 (6th ed., 1958). See also *Hayes v. State, supra.*

The defendant's further contention—that the trial court should have instructed the jury that if the bailee of the silverware had removed or attempted to remove the engraved initials therefrom she might be the receiver or the wrongdoer—was without merit. Whether or not the bailee was a receiver or had entered into a conspiracy with the defendant with respect to removing the initials in an attempt to prevent identification was not relevant to the guilt or innocence of the defendant in this case. The refusal of the court to so instruct the jury was therefore proper. Had the trial court acceded to the defendant's request the instruction would have been an incorrect statement of the applicable law. See Maryland Rule 739 b. Cf. *Bell v. State,* 200 Md. 223, 88 A. 2d 567 (1952); *Cochran v. State,* 119 Md. 539, 87 A. 400 (1913).

(v)

The sentence for the assault and battery on his wife was not illegal and did not, as the defendant contends, subject him to cruel and unusual punishment.

Section 410 of the Charter and Public Local Laws of Baltimore City (1949 ed.), as amended by Chapter 296 of the Acts of 1955, provides in part as follows:

> "[A justice] of the peace shall have power * * * to hear * * * and determine the cases of all persons brought before him charged with assault or * * * assault and battery; provided that no justice * * * shall impose * * * any fine exceeding $100 or any term of imprisonment exceeding one year, in any case of assault, or assault and battery committed up-

on any person other than * * * [a State or City policeman] * * *. But it shall be the duty of the * * * justice * * * to inform the * * * [accused] of his * * * right to a jury trial; and if a jury trial be prayed by the * * * [accused or the State] the justice shall forthwith commit or hold the * * * [accused] to bail for trial in the Criminal Court of Baltimore."

In this instance the State prayed a jury trial and the defendant was indicted by the Grand Jury of Baltimore for the assaults and batteries on the wife and her friend.

The defendant contends that for the assault and battery on his wife he should not have been fined more than $100 or imprisoned in excess of one year instead of the sentence of eighteen months he received. Citing *Heath v. State, supra,* [common law rights are subject to change by the legislature], he insists that the unlimited common law penalty for assault and battery was superseded by the penalty fixed by § 410, *supra,* as amended. We do not agree.

Section 410, *supra,* as amended, fixed only the jurisdiction of the police magistrates in Baltimore City and did not in any way affect, alter or modify the power and authority of the Criminal Court of Baltimore to impose punishment for the common law offense of simple assault and battery.

Since a trial or police magistrate [formerly called a justice of the peace] has no criminal jurisdiction except such as is conferred by statute [*State v. Ward,* 95 Md. 118, 51 A. 848 (1902),[1] we think it is clear that § 410, *supra,* as amended, did no more than fix the maximum penalty that a police magistrate has authority to impose upon a person brought before *him* charged with assault and battery. When the prosecuting officer prayed a jury trial, as he had a right to do under the statute, the police magistrate was thereby divested of any further jurisdiction over the defendant, who, by operation of

---

1. For full and detailed discussions on the jurisdiction of justices of the peace [including trial or police magistrates] in this State see *Smith v. State,* 210 Md. 440, 443, 124 A. 2d 839 (1956); Yantz v. Warden, *infra;* and *Crawford v. State,* 174 Md. 175, 178, 197 A. 866 (1938).

law, immediately became subject to the jurisdiction of the Criminal Court of Baltimore as fully and effectually as if it had acquired jurisdiction originally. Cf. *State v. Friedlander,* 141 Wash. 1, 250 P. 453 (1926).[2]

An assault and battery, when tried by the Criminal Court of Baltimore or the Circuit Court of a county—whether on a state warrant, an information or an indictment or *de novo* on appeal—being a common law offense, there is no statutory limitation on the punishment which may be imposed therefor by a *criminal* court. *Yantz v. Warden,* 210 Md. 343, 123 A. 2d 601 (1956), *certiorari* denied 352 U. S. 932; *Apple v. State, supra.* See also *Roberts v. Warden,* 206 Md. 246, 111 A. 2d 597 (1955), in which we held that a sentence of twenty years on a charge of simple assault was not cruel and unusual punishment.

For the reasons stated all three judgments must be affirmed.

*Judgments affirmed.*

---

2. In State v. Friedlander, *supra,* the transfer of the case over which the justice court and superior court had concurrent jurisdiction—after the justice court had found the defendant guilty of contributing to the delinquency of a minor—to the superior court where he was also convicted and sentenced to a longer term than the justice court had jurisdiction to impose, was affirmed by the appellate court.