————————o————————

## TEFFT *v.* TEFFT.

DIVORCE.—*Appeal.*—The discretion vested in the circuit and common pleas courts by the seventh subdivision of the seventh section of the act concerning divorces is subject, upon appeal, to revision by the Supreme Court.

SAME.—*Cause.*—Where a man marries a woman whom he knows to be the wife

of another, the courts will not relieve him from the consequences of his act, by granting him a divorce.

MARRIAGE.—*Void.*—If either party to a marriage have a husband or wife living at the time of the marriage, the marriage is absolutely void.

SAME.—*Pleading.*—A pleading, if it states a cause of action, may be good as a complaint to annul a marriage, although it be filed as a petition for divorce, and as such be bad.

SAME.—*Marriage Declared Void.*—A party who innocently contracts a marriage with a woman who is the wife of another, believing her to be unmarried, may, by judicial decree, have the marriage declared void.

JURISDICTION.—*Power to Declare Marriage Void.*—Independent of the provisions of the divorce law, the circuit courts of this State have jurisdiction to declare a marriage void.

APPEAL from the Elkhart Circuit Court.

DOWNEY, C. J.—This was a petition for a divorce. It consisted of two paragraphs. The first sets forth that the parties were married on the 14th day of October, 1839, and, as a cause for divorce, alleges that the defendant was, at the time of her marriage to the petitioner, the wife of another person named in the petition, to whom she had previously been married, and who was then living.

The second paragraph alleges that the parties were married as aforesaid, and states as a cause of divorce, that the defendant falsely and fraudulently represented to the petitioner that she was sole and unmarried, and had no husband living, and was capable of entering into the contract of marriage; that, in truth and in fact, she was then the wife of said other person, who was then still living, and which marriage was then still subsisting; that he, believing these representations to be true, but in ignorance of the truth with reference thereto, consummated said marriage with her, and lived with her as his wife until within two years last past, when he learned the facts aforesaid, and the falsity of said representations of said defendant, and ceased to cohabit with her, or in any manner to live with her as his wife; that when she made said representations, she knew them to be false, and made them to deceive the plaintiff and induce him to consummate said marriage, without which it would not have been consummated. That he has lived with her as his wife for many years in said

county and state, and which has resulted in relations both domestic and social incompatible with a separation without some judicial declaration thereof. Wherefore, he asks that said marriage may be declared null and void, that he may be entirely released therefrom, and a divorce be decreed in his favor from said defendant, and for other proper relief. The petition was filed March 4th, 1870.

The defendant demurred to the petition, for the reason that it did not state facts sufficient to constitute a cause of action. The court sustained the demurrer, and rendered judgment for the defendant, dismissing the petition; to which the petitioner excepted.

The assignment of errors raises the question as to the correctness of this action of the court. Does the petition set out any cause for which a divorce can be granted? The appellant's counsel refer us to *Janes* v. *Janes*, 5 Blackf. 141. But counsel for both parties seem to have overlooked the fact that that case was based on the Revised Statutes of 1831, referred to in the opinion, and which expressly provided for this as a cause for which a divorce might be granted. Revised Statutes of 1831, 213, sec. 1.

There is no such provision in the present statute. But the counsel for the appellant claim that the petition sets forth a good ground for a divorce under the *seventh* division of section 7, 2 G. & H. 351, which authorizes the court to grant a divorce for "any other cause" than those enumerated, "for which the court shall deem it proper that a divorce should be granted."

It was said by this court, in *Ruby* v. *Ruby*, 29 Ind. 174, that "cases may frequently arise, presenting causes for divorce not enumerated in the statutes, in which justice and public policy would alike justify the courts in granting them, under the discretion conferred by the statute."

In *Ritter* v. *Ritter*, 5 Blackf. 81, the clause similar to this one in the statute of 1831, was held to be constitutional; that the discretion vested in the inferior courts by that statute was subject to the revision of this court; and in that

case, where the circuit court had refused to grant the divorce, under this provision of the statute, the judgment was reversed, and the cause remanded, because this court was of the opinion that the divorce should have been granted.

The first paragraph of the petition alleges only that the defendant was a married woman—the wife of another man—at the time she was married to the petitioner. It does not even appear that that fact was unknown to him, that he did not enter into the marriage contract with her with full knowledge that she was the wife of another man. For this reason, if for no other, that paragraph cannot be sustained. The court cannot undertake to extricate parties from relations into which they place themselves with a full knowledge of all the facts, and with no one to blame but themselves.

With reference to the second paragraph, while there is no specific provision of the statute authorizing the granting of a divorce for this cause, and while it may be no cause for a divorce at all, we are not prepared to say that a party, in such a case, is destitute of all remedy. It is true that the statute declares marriages void, where either party had a wife or husband living at the time of such marriage (1 G. & H. 429, sec. 2); but the consequences to the innocent party resulting from the uncertainty attending the fact, or for other reasons, might make it of the utmost importance to such party to have a judicial investigation and decree.

Though in this case the pleading setting forth the cause of action is denominated a petition, and was probably filed with reference to the divorce law, yet if it states the facts necessary, it may, perhaps, be held good as a complaint to annul the marriage, on account of the alleged fraud.

Chancellor KENT says, "A marriage procured by force or fraud is void, *ab initio*, and may be treated as null by every court in which its validity may be incidentally drawn in question. The basis of the marriage contract is consent, and the ingredient of fraud or duress is as fatal in this as in any other contract, for the free assent of the mind to the contract is wanting." Again, he says, "It is equally proper in this

case, as in those of idiocy or lunacy, that the fraud or violence should be judicially investigated, in a suit instituted for the very purpose of annulling the marriage; and such a jurisdiction in the case properly belongs to the ecclesiastical courts in England, and to the courts of equity in this country." And again, he says, "It is well understood that error, and even disingenuous representations, in respect to the qualities of one of the contracting parties, as his condition, rank, fortune, manners, and character, would be insufficient. The law makes no provision for the relief of a blind credulity, however it may have been produced." 2 Kent Com. 76, 77. And see Cooley's Blackstone's Com., book 1, p. 439, note 15.

But in a case where, as in this case, the contract is void *ab initio*, will the court take. jurisdiction for the purpose of a judicial declaration of that fact?

The statute of frauds declares conveyances made to hinder, delay, or defraud creditors void, and they might always be so adjudged where they came in question in a court of law. But notwitstanding this, courts of chancery entertained jurisdiction to declare them void and clear them out of the way of the judgment creditor. *Brown* v. *Wyncoop,* 2 Blackf. 230; *Frakes* v. *Brown, id.* 295; *Rogers* v. *Evans,* 3 Ind. 574; *Scott* v. *Purcell,* 7 Blackf. 66.

It was held by this court in *Hays* v. *Hays,* 2 Ind. 28, that courts of equity will entertain jurisdiction to cancel or set aside an instrument void on its face.

The constitution of this State provides that the judicial power of the State shall be vested in a Supreme Court, in circuit courts, and in such inferior courts as the general assembly may establish. Art. 7, sec. 1.

It also provides that the circuit courts shall have such civil and criminal jurisdiction as may be prescribed by law. Art. 7, sec. 8.

It is provided by statute that the circuit court shall have original exclusive jurisdiction in all cases of slander, libel, breach of marriage contract, and when the title to real estate

shall be in issue, and concurrent jurisdiction, except as other-
wise provided by law, *in all civil actions*, &c. 3 Ind. Stat.
181, sec. 5.

In *Wightman* v. *Wightman*, 4 Johns. Ch. 343, Chancellor
KENT said, "In England all matrimonial, and other causes
of ecclesiastical cognizance, belonged originally to the tem--
poral courts, and when the spiritual courts cease, the cogni--
zance of such causes would seem, as of course, to revert back
to the lay tribunals. I apprehend, then, that the power is
necessarily cast upon this court, which has, by statute, the
sole jurisdiction over the marriage contract in certain speci-
fied cases. The legislature has, in that respect, pointed to
this court as the proper organ of such jurisdiction."

In *LeBarron* v. *LeBarron*, 2 Amer. Law Reg. (N. S.) 212,.
a case in the Supreme Court of Vermont, it is said, "The
legal power to annul marriages has been recognized as ex-
isting in England from a very early period, but its adminis-
tration, instead of being committed to the common law
courts, was exercised by their spiritual or ecclesiastical courts.
Under the administration of those courts, for a long period
of time, the principles and practice governing this head of
their jurisdiction ripened into a settled course and body of
jurisprudence, like that of the courts of chancery and admi-
ralty, and constituted, with those systems, a part of the gen--
eral law of the realm, and in the broad and enlarged use of
the term, a part of the common law of the land, and was
so held by the courts of that country. This country having
been settled by colonists from that, under the general author-
ity of its government, and remaining for many years a part
of its domain, became and remained subject and entitled to
the general laws of the government, and they became equal-
ly the laws of this county, except so far as they were inap--
plicable to the new relations and condition of things. This
we understand to be well settled, both by judicial decision
and the authority of eminent law writers. But if this were
not so, the adoption of the common law of England, by the

legislature of the state, was an adoption of the whole body of the law of that country (aside from their parliamentary legislation), and included those principles of law administered by the courts of chancery and admiralty and the ecclesiastical courts (so far as the same were applicable to our local situation and circumstances and not repugnant to our constitution and laws), as well as that portion of their laws administered by the ordinary and common tribunals."

In *Perry* v. *Perry*, 2 Paige, 501, Chancellor WALWORTH held, that that part of the law of England which renders a marriage contract absolutely void in certain cases formed a part of the law of the state of New York, and might be enforced by the appropriate tribunals, independent of any statutory provision. This case seems well sustained by authorities, among which is that of *Wightman* v. *Wightman, supra,* by KENT, Chancellor. *Scott* v. *Shufeldt,* 5 Paige, 43, is another case to the same effect.

Having adopted the common law of England in this State by legislative enactment, 1 G. & H. 415, and the rules which were applied in cases of this kind in the ecclesiastical courts of that country being a part of the common law, 1 Bl. Com. 67, it would seem to follow that those rules are a part of the law of this State. The circuit court in this State having, as we have already seen, jurisdiction in all civil actions, except when otherwise provided, it follows that they have jurisdiction to declare the marriage contract void in a direct proceeding in a proper case, independent of any provisions in the divorce law.

We are not very favorably impressed with the merits of the case made in the second paragraph of the complaint in the case at bar, on account of the lapse of time, but we have concluded to hold that paragraph good. We cannot tell what facts may be disclosed in the further progress of the case.

The judgment is reversed, with costs, and the cause remanded.

*A. S. Blake* and *R. M. Johnson,* for appellant.

*J. H. Baker* and *J. A. S. Mitchell,* for appellee.