Mr. Justice DAVIS
 

 delivered the opinion of the court.
 

 If the learned judge of the court below erred in not sustaining the plea in bar, we are relieved of the necessity of looking into the evidence in order to see whether the cause was rightly decided on its merits. The inquiry arises then, in the first place, whether he did so err or not.
 

 There must be an end of every controversy, and the question raised by the plea is, whether the litigation concerning the legitimacy of Ferrié in the State tribunals of New York has been of such a character that it cannot be renewed between the same parties in the Federal courts.
 

 Chief Justice De Grey, in the Duchess of Kingston’s ease,
 
 *
 
 has, in a few words, given a comprehensive summary of the law on this subject: “From the variety of cases in respect to judgments being given in evidence,” said the chief justice, “ these two distinctions seem to follow as being general]}’ true: first, that the judgment of a court of
 
 concurrent
 
 jurisdiction
 
 directly
 
 upon the point is, as a plea, a bar, or, as evidence, conclusive between the same parties on the same matter directly in question in another court; secondly, that the judgment of a court of exclusive jurisdiction directly upon the point is, in like manner, conclusive upon the same matter between the same parties, coming incidentally in question, in another court for a different purpose. But neither the judgment of a concurrent or exclusive jurisdiction is evidence of any matter incidentally cognizable, nor of any matter to be inferred by argument from the judgment.” Did the fact of legitimacy come before the surro
 
 *470
 
 gate’s court, directly or incidentally, and was it necessary to decide the point before the letters of administration could issue? are the questions to be considered and determined.
 

 In eases of intestacy in New York the surrogate has the sole and exclusive power of granting letters of administration, and is obliged to grant them—no question being made as to personal competency—to the relatives of the deceased who would be entitled to succeed to his or her personal estate, and if Femé were the only child of the intestate, he had the legal right to administer, because he succeeded to the whole of her estate.
 
 *
 
 It is true a large discretion is given to the surrogate to secure a competent person, and if relatives are disqualified, for certain causes mentioned in the statute, or are unwilling to accept, administration may be granted to others, and, in such a case, the basis of action concludes nothing as to the right of succession. But if there be next of kin, and no personal disqualifications attach to them, the surrogate can exercise no discretion on the subject. The inquiry becomes then a matter of right, and is, by the express language of the statute, to be determined by the right to the succession.
 
 †
 

 In this state of the law on the subject Ferrié applied for letters of administration on the estate of Jeanne Du Lux, claiming to be her son, and, therefore, her nearest of kin. But these appellants said, You cannot have these letters, because you are illegitimate, and we, as the descendants of a deceased aunt of the intestate, are her nearest relatives, and therefore entitled to the succession. The purpose was to get at. the estate, and so they say in their' petition addressed to the surrogate for leave to intervene. They allege themselvqs to be “ the nearest of kin ” and “ entitled to share upon the distribution of the estate,” and ask to be heard “ and to receive their distributive share of the estate.” Manifestly, they sought the contest because they supposed the right to administer involved the right to the property. Their opposition was not based on the ground of Ferrié’s personal un
 
 *471
 
 fitness, nor did they wish to administer themselves. How, then, can it be said that the administration in this case was granted, without any reference to, or consideration of, the question of distribution? In the absence of personal disqualifications, as we have seen, it is compulsory on the surrogate to grant the letters to the party to whom the inheritance belongs. This is the primary and only object of inquiry, in order to ascertain to whom the letters should be issued. The illegitimacy of Ferrié in any other view was an immaterial issue. It is personal good conduct, and not the status of birth which constitutes a man a fit person to be intrusted with the duties of administration. It is idle, therefore, to suppose that this contest was inaugurated and carried on, on any other theory, than that the result of it settled the right to the estate. Because an administrator can, under certain circumstances, be appointed who is not connected by kinship with the intestate proves nothing. It is enough to say there was no occasion for the surrogate to do this, and his action was not grounded on his ability to do it in certain contingencies. His power was invoked under that clause of the statute which directed him to issue letters, in case there were relatives, to the one to whom the estate went, by the law of descents. Ferrié alleged himself to be that person, because he was the son of the deceased. These appellants said, Not so, for you are illegitimate, and have no inheritable blood, and we propose to try that question, and if it is decided in our favor, we get the estate, as we are, confessedly, in that event the nearest of kin. The issue thus solicited was framed, voluminous evidence both from abroad and at home taken upon it, able arguments heard, elaborate opinions given, and repeated decisions made against the right set up by these appellants, and yet they are not content. Beaten in the State courts on the vital question—the illegitimacy of Ferrié—they turn to this court to try over again the very point decided against them. Can they do this? They say the point was only cognizable incidentally; but how can this be, when the surrogate could not have done the thing he did do without deciding it? It
 
 *472
 
 had to be decided in order to determine to whom the letters should issue, and the decision of it, of necessity, settled the distribution of the estate. If this litigation can be renewed in a separate suit for distribution in another court, then the same persons can try the same question, in respect to the same subject, in two different suits. The question before the surrogate was the legitimacy of Ferrié, and the subject in regard to which it was necessary to decide it, was the distribution of the estate. That the ultimate right of property was the pivot point of the case appears by the decree itself, for it finds Ferrié to be the legitimate son and sole nearest of kin of the intestate, and by reason of this directs administration to be granted to him. And it goes further, for it finds, substantially, that the contest was made on the question of kinship alone, and denies the claim set up by these appellants. Suppose the suit for distribution had been brought in the surrogate’s court, can there be a doubt that the decree granting administration to Ferrié would be plead-able in bar to it ? If such be its effect in that court, can or ought it to have a different effect in another court of concurrent jurisdiction ? If so, then instead of there being uniformity in the exercise of concurrent jurisdiction, there would be conflicting determinations, and the evils resulting from such a course of procedure can be easily foreseen. Neither the policy of the law nor the interests of society require this to be done.
 

 ¥e have thus far considered the question on principle, but we are also sustained by authority.
 

 In the Ecclesiastical Courts in England, in cases of intestacy, the right of administration follows the right to the property,
 
 *
 
 as it does in New York and elsewhere in this country.
 

 The effect of the sentence of the Ecclesiastical Court, in granting administration, was considered by Lord Hardwicke, in
 
 Thomas
 
 v.
 
 Ketteriche,
 

 †
 

 on a bill filed for distribution of an intestate’s goods, and he held himself concluded by it.
 
 *473
 
 There had been a contest in the Ecclesiastical Court for administration between the same parties on the point which was the nearest of kin. The court decided they were in equal degree, and granted administration to Ketteriche, because Thomas was a minor. Thomas, believing the Ecclesiastical Court had not computed the degrees correctly, and that he was nearer in relationship to the intestate, filed his bill for distribution in the High Court of Chancery for the purpose of getting another computation, but the Lord Chancellor refused to go behind the sentence of the Ecclesiastical Court. “That court,” he said, “ is bound to grant administration to .the next of kin; and, if I should determine these parties not to be equal, but the plaintiff nearer, it is directly contrary to the foundation of this sentence, which would make it erroneous and to be reversed. The consequence of which would be that, by choosing to come here for a distribution, you would change the rule relating thereto, for the Buit might have been in the Ecclesiastical Court for a distribution as well as here, and that court could not have contradicted the sentence by which administration was granted.” This decision was in 1749.
 

 In
 
 Bouchier
 
 v.
 
 Taylor,
 

 *
 

 the same point was raised and decided the same way by the House of Lords in 1776. Notwithstanding these decisions the question was again the subject for discussion, in a suit for distribution, before Vice-Chancellor Bruce, in
 
 Barrs
 
 v. Jackson,
 
 †
 
 as late as 1842, and he denied to the sentence of an Ecclesiastical Court, in a suit for administration, the effect which was given to it in the other cases. But, on appeal to the-House of Lords, this decree was reversed, and Lord Chancellor Lyndhurst, on a review of all the authorities, held that the question was no longer an open one.
 
 ‡
 
 It is to be observed, in regard to the opinion of the learned chancellor, that, although he declined to enter into any of the general arguments in the case, on
 
 *474
 
 the ground that he was bound by the decision of the House of Lords in
 
 Bouchier
 
 v.
 
 Taylor,
 
 yet he concedes that if the suit for distribution had been instituted in the Ecclesiastical Court, the sentence in the suit for administration would have been conclusive upon it, and, if it were conclusive there, that it ought to be conclusive in the Court of Chancery.
 

 It may, therefore, as the result of these authorities, be safely assumed to be the established law iu England, that if the sentence of an ecclesiastical court, in a suit for administration, turns upon the question of which of the parties is next- of kin to the intestate, it is conclusive upon that question in a subsequent suit in the Court of Chancery between the same parties for distribution.
 

 We are not aware of any decisions directly upon this subject in any of the State courts of this country. This, doubtless, results from the fact that, with us, estates are settled and distributed iu the same court that grants the letters of administration. It seldom occurs here that separate suits for distribution are instituted at all, and very rarely, anywhere else than in the courts of probate. The recent case in this court, of
 
 Blackburn
 
 v. Crawford,
 
 *
 
 is, in some of its features, unlike this, but the principle of that case would seem to create an estoppel in this.
 

 On principle and authority, therefore, the judgment in the suit for administration in New York was pleadable in bar to this suit, and on that ground alone the bill should have been dismissed.
 

 Decree aeeirmed.
 

 The CHIEF JUSTICE having been of counsel for the appellee, Ferrié, did not sit iu this case.
 

 *
 

 2 Smith’s Leading Cases, 6th ed. 648.
 

 *
 

 2 Revised Statutes of New York 73,
 
 \
 
 23; 74, $ 27; 96, $ 75; $<! 4, 5.
 

 †
 

 lb. 74, § 27.
 

 *
 

 1 Williams on Executors, 394.
 

 †
 

 1 Yesey, 833.
 

 *
 

 4 Brown’s Parliamentary Cases, 708.
 

 †
 

 1 Younge
 
 &
 
 Collier’s Chancery Cases, 585.
 

 ‡
 

 1 Phillips, 582.
 

 *
 

 8 Wallace, 175.