WILLIAMS, Appellant, vs. WILLIAMS, Respondent.

*March 6 — April 28, 1885.*

MARRIAGE AND DIVORCE. *(1, 4) Presumption of divorce from second marriage. (2) Void marriage. (3) Previous unchastity. (5) Judgment of divorce:* Res adjudicata: *Estoppel.*

1. The fact that one of the parties subsequently marries again during the life of the other does not raise an absolute presumption of law that the former marriage had been dissolved.

2. If one of the parties to a marriage has already a lawful husband or wife, such marriage is a nullity, void *ab initio.*

3. Illegal intercourse on the part of a woman before marriage, even though fraudulently concealed, does not render the marriage void.

4. J. was married to R. in 1860, and a few weeks thereafter deserted her and never returned, R. continuing to reside in the same place. In 1864 J. was married to the plaintiff. In 1868 J. and the plaintiff separated, and in 1870, while living near to J., the plaintiff was publicly married to W. *Held,* that the presumption was not in favor of but against the validity of the marriage of 1864.

5. After being married to W. the plaintiff brought suit against J. for a divorce on the ground of desertion and obtained judgment, J. making no defense. *Held,* that such judgment did not estop the plaintiff from showing, in an action to recover dower in the estate of W., that she was never legally married to J. because at the time of her supposed marriage to him he had another wife.

APPEAL from the Circuit Court for *Milwaukee* County. The case is thus stated by Mr. Justice CASSODAY:

This is an action of ejectment, commenced September 7, 1874, by the plaintiff, as the widow of Lewis Williams, Sr., for dower of an undivided one-third of 260 acres of land in Kenosha county, and damages for withholding the same. The answer denies that she was ever such widow, or the wife of the deceased. On the first trial the jury found in favor of the plaintiff, and the judgment entered upon the verdict was reversed by this court for intervening error. 46 Wis. 464.

Upon the cause being remanded, the jury was waived,

and the case was tried by the court, which found, in effect, that William Jones married Amelia Rees, April 6, 1860, at Ebber Vale, Wales, Great Britain, but abandoned her in June, 1860, and never returned to or saw her thereafter; that the same William Jones married the plaintiff (then *Jane Davis*) at Newtown, Wales, June 13, 1864, and cohabited with her as late as 1869 in Kenosha county; that May 9, 1870, the plaintiff married Lewis Williams, Sr., at Racine, Wisconsin; that in October, 1870, the plaintiff, by the name of *Jane Jones*, commenced an action for divorce against William Jones, upon personal service and verified complaint, on the ground that he had wilfully deserted her in 1868 and had not returned, and obtained judgment of divorce therein, in the circuit court for Kenosha county, in November, 1870; that Lewis Williams, Sr., was seized of the premises in question May 9, 1870, when he was married to the plaintiff, and thereafter conveyed the same to the defendant without the signature of the plaintiff; that Lewis Williams, Sr., died August 25, 1873; that William Jones was divorced from Amelia Rees before he married the plaintiff; that the plaintiff was, May 9, 1870, and until her divorce in November, 1870, the wife of William Jones; that Amelia Rees was living as late as October, 1877; that the plaintiff was not the wife of Lewis Williams, Sr., at the time of his death; that the plaintiff demanded possession of the premises in question before the commencement of this action, which the defendant refused to deliver up.

Upon the findings judgment was rendered against the plaintiff and in favor of the defendant, from which the plaintiff appeals.

*Chas. Quarles*, of counsel, for the appellant, argued, among other things, that the judgment of divorce between Jones and the appellant was conclusive only of the fact that they had been divorced, and not of the fact that they had been husband and wife. 2 Bishop on M. & D. § 774;

Williams vs. Williams.

Freeman on Judgm. § 313; 2 Phillips on Ev. (C., H. & E.), *74, *90–94; *Melia v. Simmons*, 45 Wis. 334, 337; 1 Greenl. on Ev. § 550; *Burlen v. Shannon*, 3 Gray, 387, 389; *Rex v. Gibson*, Russ. & R. Cr. Cas. 342, 343n. The doctrine that the law of a foreign country is presumed to be the same as our own, is limited to matters of contract, commercial matters, etc., and general principles of law existing in all Christian countries. 1 Greenl. on Ev. § 488a; *Wright v. Delafield*, 23 Barb. 498. And this presumption is not indulged as to a law imposing a penalty or working a forfeiture. *Hall v. Augustine*, 23 Wis. 383; *Cutler v. Wright*, 22 N. Y. 474; *Forbes v. Scannell*, 13 Cal. 242; *White v. Knapp*, 47 Barb. 549. The courts presume that the common law prevails in a foreign state until the contrary is proved. *Averett v. Thompson*, 15 Ala. 678; *Rogers v. Zook*, 86 Ind. 237; *Meyer v. McCabe*, 73 Mo. 236; *Hydrick v. Burke*, 30 Ark. 124. But they will not take judicial notice of foreign statutes at variance with the common law, nor presume that such statutes exist in common with the state of the forum. 1 Phillips on Ev. *624, n. 11; *Savage v. O'Neil*, 44 N. Y. 298; *Johnson v. Chambers*, 12 Ind. 102; *Titus v. Scantling*, 4 Blackf. 89.

For the respondent there was a brief by *Fish & Dodge*, attorneys, and *D. S. Wegg*, of counsel, and oral argument by *Mr. Dodge* and *Mr. Wegg*. They contended, *inter alia*, that upon the marriage of the plaintiff and Jones in 1864, the law would presume that the former wife of Jones was dead or that he had been divorced from her. *McCarty v. McCarty*, 2 Strobh. 6, 10; *King v. Twyning*, 2 Barn. & Ald. 386; *Harris v. Harris*, 8 Bradw. 63; *Klein v. Laudman*, 29 Mo. 259; *Yates v. Houston*, 3 Tex., 433; *Carroll v. Carroll*, 20 id. 731; *Smith v. Smith*, 1 id. 621; *Blanchard v. Lambert*, 43 Iowa, 228; *Lockhart v. White*, 18 Tex. 102; *Halbrook v. State*, 34 Ark. 511; *Myatt v. Myatt*, 44 Ill. 473. In the absence of proof the law of a sister state or of a foreign

country will be presumed to be the same as that of the forum. *Rape v. Heaton,* 9 Wis. 328; *Jarvis v. Barrett,* 14 id. 591; *Jones v. Spencer,* 15 id. 583; *Walsh v. Dart,* 12 id. 635; *Pierce v. C. & N. W. R. Co.* 36 id. 288; *Horn v. C. & N. W. R. Co.* 38 id. 463; *Kellam v. Toms,* id. 592; *Monroe v. Douglass,* 5 N. Y. 447.

CASSODAY, J.   Was the marriage between the plaintiff and Lewis Williams, Sr., legal and binding upon the parties at the time it was consummated, on May 9, 1870? The answer to this question must be in the affirmative, unless the plaintiff was at the time the wife of William Jones. If she was at the time the wife of Jones, then she was incapable of entering into the marriage contract with Lewis Williams, Sr. Sec. 2330, R. S. The statute expressly prohibits such second marriage. *Ibid.* It goes further and declares that "if solemnized within this state," as this was, it shall "be absolutely void, without any judgment of divorce or other legal proceeding." Sec. 2349, R. S. Whether the plaintiff was at that time the lawful wife of Jones, depends upon whether the marriage between them in Wales, June 13, 1864, was a legal marriage. It is a verity in the case that four years prior to that marriage Jones had been lawfully married to Amelia Rees, who was then still living, and who continued to live for at least three years after the commencement of this action. It is claimed that the trial court was bound to presume, in the absence of testimony, that the marriage between Jones and Amelia, April 6, 1860, had been dissolved prior to his marriage with the plaintiff. The finding of the trial court to that effect is based entirely upon that presumption. There is no claim or pretense that there is in the record any evidence of any such divorce, except the alleged presumption arising from the fact that Jones married the plaintiff. It is claimed that this alleged rule of presumption is settled by the authorities conclusively, and

beyond all question.   Several cases are cited in the brief of counsel in support of this statement.   Some of these cases will be considered.

The leading case cited is *King v. Twyning*, 2 Barn. & Ald. 386.   That case is cited in support of several of the other cases cited by counsel, as in *Yates v. Houston*, 3 Tex. 449; *Carroll v. Carroll*, 20 Tex. 741; *Harris v. Harris*, 8 Bradw. 65; *Blanchard v. Lambert*, 43 Iowa, 230.   In *King v. Twyning* the question was whether the pauper, Mary Burns, was then the lawful wife of Francis Burns.   It appeared that about seven years before she had married Richard Winter, with whom she lived a few months, when he enlisted as a soldier and went abroad on foreign service, and had never thereafter been heard of.   A little more than a year after his departure Mary married Francis Burns, by whom she had children, and with whom she continued to live.   In favor of innocence, the court presumed that Winter was dead before Mary married Burns.   A person who has not been heard of for seven years is presumed to be dead, but there is no legal presumption that the death occurred at the end of the seven years, nor at any precise time during the seven years.   *Doe v. Nepean*, 5 Barn. & Adol. 86.

In *King v. Harborne*, 2 Adol. & E. 540, one Henry Smith had married the pauper, Ann Smith, April 11, 1831, and then deserted her.   It appeared, also, that he had married Elizabeth Meadows, October 4, 1821, and continued to live with her about four years, when he left her, and she went to the hospital, and a letter was produced from her, dated in Van Dieman's Land twenty-five days before Smith married Ann.   In that case it was held that the sessions were authorized to presume that the first wife was living at the time of the second marriage.   In giving the opinion of the court, Lord DENMAN, C. J., in speaking of *King v. Twyning*, *supra*, said this court in that case "merely decided that the case raised

no presumption upon which the findings of the sessions could be disturbed. The two learned judges [writing the opinions] certainly appear to have decided the case upon more general grounds. The principle, however, upon which they seem to have proceeded was not necessary to that decision. I must take this opportunity of saying that nothing can be more absurd than the notion that there is to be any rigid presumption of law on such a question of fact, without reference to accompanying circumstances; such, for instance, as the age or health of the party. There can be no such strict presumption of law. . . . I think that the only questions in such cases are, what evidence is admissible, and what inference may fairly be drawn from it." LITTLEDALE, J., expressed himself of the same opinion, and said: "All these questions depend upon the facts. There can be no direct evidence as to the fact, unless the party be shown to be alive after the marriage." All the judges concurred. In that case there was no evidence tending to show any divorce from Elizabeth, and no intimation that the court had any right to presume such divorce.

Several years afterwards the House of Lords, after considering both of the above cases, and in opinions delivered by Lord Chancellor COTTENHAM and Lords CAMPBELL and BROUGHAM, declared substantially the same rule, and held that "there is no absolute presumption of law as to the continuance of life, nor any absolute presumption against a party doing an act because the doing of it would make him guilty of an offense against the law. In every instance the circumstances of the case must be considered." *Lapsley v. Grierson*, 1 H. L. Cas. 498. The question there involved was the legitimacy of Robert Lapsley and his sister Joanna, born in 1807 and 1810, and whose parents were John Lapsley, who died in 1810, and Janet McKinley, who was alleged to have been his wife. In behalf of Robert and Joanna, it was claimed that their mother, Janet Mc-

Kinley, had been married three times in Scotland: first, to Kidd, who died in 1796; secondly, to Paul, who left for America in 1801 and was lost at sea in 1804 or 1805; and thirdly, to their father, John Lapsley, in 1807. The first two marriages were admitted, but the third was denied, and it was alleged that the cohabitation commenced unlawfully soon after Paul's departure from Scotland, and so continued, without its character having been changed, until the death of the father, John Lapsley, in 1810. " To make such children legitimate, it was held necessary for those who asserted their legitimacy to prove either a legal origin of the cohabitation, or a change in the nature of it after the death of [Paul] had become known to all the parties. The mere fact that [John Lapsley] and the woman [Janet McKinley] continued to live together was not sufficient for that purpose. Under the circumstances the children were held illegitimate, though born after the date of [Paul's] death." But there is no intimation in the case of any presumption of any divorce of Paul and Janet McKinley in order to sustain the innocence of her and John Lapsley, and thus legitimize the children.

Of course, where there has been a marriage ceremony, it is *prima facie* valid, for the law presumes in favor of marriage. *Piers v. Piers*, 2 H. L. Cas. 331. In the recent case of *Reg. v. Willshire*, L. R. 6 Q. B. Div. 366, the indictment charged the prisoner with having married Charlotte Lavers, September 7, 1879, and then, while she was still living, having feloniously married Edith Miller, September 23, 1880. These charges having been clearly proved, the prisoner, to prevent conviction on that indictment, himself proved that he had been convicted of bigamy in June, 1868, on an indictment charging him with having married Ellen Earle in 1864, and then, while she was still living, having feloniously married Ada Leslie, April 22, 1868. There was no evidence that Ellen Earle was living September 7, 1879; nor that

her marriage with the prisoner in 1864 had ever been dissolved or declared a nullity. The prisoner was convicted; and, upon the question reserved, Lord COLERIDGE, C. J., among other things, used this language: "It is said, and I think rightly, that there is a presumption in favor of the validity of this latter marriage (1879), but the prisoner showed that there was a valid marriage in 1864, and that the woman he then married was alive in 1868. He thus set up the existence of a life in 1868, which, in the absence of any evidence to the contrary, will be presumed to have continued to 1879. It is urged, in effect, that the presumption in favor of innocence — a presumption which goes to establish the validity of the marriage of 1879 — rebuts the presumption in favor of the duration of life. It is sufficient to raise a question of fact for the jury to determine. It was for the jury to decide whether the man told and acted a falsehood for the purpose of marrying in 1879, or whether his real wife was then dead." Because the determination of the fact as to whether she was then living or dead, from these conflicting presumptions, was withdrawn from the jury, the court were unanimous in holding that the conviction could not be sustained. HAWKINS, J., said: "This case depended on a question of fact whether Ellen Earle was alive September 7, 1879, or not. If she was alive, the prisoner was entitled to be acquitted; if she was dead, he was rightly convicted. There was proof that Ellen was alive in 1868; there was presumption that her life continued. The only evidence to the contrary was that the prisoner presented himself as a bachelor to be married in 1879. Whether that would have satisfied the jury that his former wife was then dead, was a question for them to decide, but it was not left to them for decision."

The *Dysart Peerage Case*, decided in the House of Lords the same month, covered some of the questions before this court on the former appeal, but nothing in conflict with the

English rule as to conflicting presumptions, above stated. L. R. 6 App. Cas. 489; *S. C.* 34 Eng. (Moak), 550. That rule has judicial sanction in this country. *Wiseman v. Wiseman,* 73 Ind. 112; *S. C.* 89 Ind. 479; *Comm. v. Thompson,* 6 Allen, 591; *S. C.* 11 Allen, 23; *Gorman v. State,* 23 Tex. 646; *Ellis·v. Ellis,* 58 Iowa, 720; Best on Ev. § 334. The Texas and Iowa cases, here cited, virtually overrule the prior cases in the same states respectively, cited by counsel.

Under the rule suggested, there is no rigid presumption against the continuance of the life of one of the parties to a prior marriage in order to establish the innocence of the other party to a subsequent marriage; much less is there any rigid presumption of a dissolution of the first marriage by a divorce prior to the second, in order to establish such innocence. *Smith v. Smith,* 5 Ohio St. 32. Probably there are cases in which the facts and circumstances were such as to justify the inference that the former marriage had been dissolved by a divorce; but the rule indicated authorizes no absolute presumption of law to that effect. Each case must be determined upon its own facts and circumstances, and such inferences as should fairly and reasonably be drawn from them. The question whether the plaintiff was lawfully married to Jones, June 13, 1864, must be so determined.

It is confessed that four years before that marriage the same Jones had been married to Amelia in Wales; that he only lived with her about twelve weeks; that during the most of that time they were at the house of Amelia's father; that just before the end of the twelve weeks, and in order to start Jones in business, his father gave him £20, and Amelia's father gave him £20 more; that a few days after receiving these gifts, Amelia's husband left the house of her father without saying whither he was going, and never returned. On his departure, Amelia found that he had taken £10½ of her own money. On the next day Amelia and her

father went in search of him as far as Liverpool, where they were informed that he had embarked on board a vessel bound for America. Amelia continued to live with her father, or in the vicinity, as late as 1877; but during all that time she never received any paper or letter from her husband, Jones.

The opinion of the court in the Massachusetts case cited, is peculiarly applicable to this state of facts. It is there said: "But the case stated in this bill of exceptions is wanting in one of the essential facts stated as the foundation for a right to presume the death of the husband. It is only to the person who leaves his home or place of residence, and is gone more than seven years and not heard of, that this presumption is applicable. Here the wife went away, and the husband, for aught that appears, remained at Lawrence, or in the vicinity. . . . In the facts stated we see no sufficient ground for any presumption of the death of the husband upon which the wife of Carleton or the defendant could properly have acted." Applying these principles to this case, and it follows that since Jones went to parts unknown to Amelia, and she remained at her father's home where he left her, or in that vicinity, an inference of Jones' death, and possibly of his divorce, might have been fairly drawn from the facts and circumstances in favor of Amelia's innocence, had she got married, yet that no such inference could reasonably be drawn in favor of the innocence of Jones; for as to him he knew where he left his wife, and hence could easily have ascertained the facts. From the facts stated, it cannot fairly be inferred that Jones and Amelia were divorced at any time, much less prior to the time when the plaintiff and Jones went through the marriage ceremony in 1864. On the contrary, we must infer that no such divorce was ever obtained.

In addition, it appears that the plaintiff and Jones separated in 1868 or 1869, while living in Kenosha, and that the

plaintiff, near where Jones then lived, publicly married Williams, and openly lived with him there as her husband. These facts, of themselves, raise an inference against the validity of the marriage of 1864. *Jones v. Jones*, 48 Md. 391; *Weatherford v. Weatherford*, 20 Ala. 548. These things, in connection with the other facts and circumstances stated, force upon us the conviction that Amelia was the lawful wife of Jones at the time he went through the marriage ceremony with the plaintiff. This being so, that marriage, had it been consummated in this state, would have been absolutely void without any judgment of divorce or other legal proceeding, under the statutes above cited, which were in force at the time. Sec. 3, ch. 109, and sec. 1, ch. 111, R. S. 1858. The same would be true in respect to that marriage, if we are to presume, as claimed, that the law in Wales at the time was the same as our own. There are decisions authorizing such presumption. In addition to those cited by counsel, see *Hynes v. McDermott*, 82 N. Y. 41; *Comm. v. Kenney*, 120 Mass. 387. The question, however, becomes immaterial here, for, if that presumption is not to be indulged, then the common law must be deemed to have been in force in Wales; and since Amelia was the lawful wife of Jones at the time of his alleged marriage with the plaintiff, he was thereby disabled, and rendered absolutely incapable at common law of effecting a valid marriage with the plaintiff, and the attempt to do so by the marriage ceremony in question was a nullity, absolutely and *ab initio*. *Lady Madison's Case*, 1 Hale, P. C. 693; *Riddlesden v. Wogan*, Cro. Eliz. 858; *Hemming v. Price*, 12 Mod. 432; *Rex v. Penson*, 5 Car. & P. 412; *Regina v. Brawn*, 1 Car. & K. 144; *Heffner v. Heffner*, 23 Pa. St. 104; *Smart v. Whaley*, 6 Smedes & M. 308; *Martin's Heirs v. Martin*, 22 Ala. 86; *Rawdon v. Rawdon*, 28 Ala. 565; *Wightman v. Wightman*, 4 Johns. Ch. 343; *Glass v. Glass*, 114 Mass. 563; *Tefft v. Tefft*, 35 Ind. 44; *Donnelly v. Donnelly's Heirs*, 8 B.

Mon. 113; *In re Shaak's Estate,* 4 Brewst. 305; *Patterson v. Gaines,* 6 How. 550; *Halbrook v. State,* 36 Am. Rep. 17; *State v. Goodrich,* 14 W. Va. 834; *Higgins v. Breen,* 9 Mo. 497; *Johnson v. State,* 61 Ga. 305; *People v. Brown,* 34 Mich. 339; *Gathings v. Williams,* 5 Ired. Law, 487; *S. C.* 44 Am. Dec. 49, and notes.

The marriage between the plaintiff and Jones being absolutely void *ab initio,* it was good for no legal purpose, and its invalidity may be maintained in any proceeding in any court between any parties, whether in the life-time or after the death of the supposed husband or wife, or both, and whether the question arises directly or collaterally. 1 Bish. Mar. & Div. (6th ed.) § 105, and cases there cited; 2 Greenl. Ev. § 464. It is otherwise where the marriage is voidable merely. *Ibid.; Gathings v. Williams,* 5 Ired. Law, 487. Since Jones was the lawful husband of Amelia from the time of their marriage in 1860 until long after the commencement of this action, it follows that he could not, during any portion of that time, be the husband of the plaintiff. Since during that time he was not her husband, she could not be his wife. The plaintiff not having been legally married to Jones prior to May 9, 1870, was free at that time to marry Williams, unless the mere fact of such prior illegal intercourse with Jones was an impediment to such marriage. But such illegal intercourse, even though it had been fraudulently concealed by her from Williams before their marriage, would not, on discovery, have been ground for divorce from her at the suit of Williams, much less an impediment to their marriage. *Varney v. Varney,* 52 Wis. 120. It follows that the plaintiff and Williams were lawfully married May 9, 1870, and thereupon became husband and wife, with all the rights and obligations on the part of each incident to that relation.

That marriage having been lawful and binding upon Williams and the plaintiff at the time it was consummated,

followed by cohabitation during the life of Williams, with no divorce from each other intervening, it would seem to follow that the plaintiff is the lawful widow of Williams, with all the rights incident to that *status*. But it is urged with much learning, ability, and plausibility, in effect, that notwithstanding the plaintiff was the lawful wife of Williams from May 9, 1870, to the time of his death, and that Jones, during the same period, was the lawful husband of Amelia, yet that as the plaintiff, six months after her marriage with Williams, brought an action of divorce against Jones on the ground of his alleged desertion, and obtained a judgment therein, she is thereby forever estopped in any and all courts, and in whatever form the question may arise, from maintaining that she was never the lawful wife of Jones, or that she was ever the lawful wife of Williams. Is this the law? The question is novel, and for that reason, among others, is entitled to careful consideration; and, besides, it is not free from difficulty. We agree with counsel that it was not decided upon the former appeal. The effect of such divorce, on the assumption that the plaintiff had been lawfully married to Jones, was there, however, expressly reserved for more "thorough examination," by reason of its being "one of such grave importance to the public, and so far-reaching in its effects upon the rights of persons not parties to the action for divorce;" and because the case, as then presented, was necessarily reversed for a refusal to give proper instructions to the jury. 46 Wis. 474.

In determining the question, there must be no infringement of any of the established rules as to the conclusiveness of judgments, or their estoppel, as evidence. It was, in effect, determined by the judges, unanimously, on the trial of the duchess of Kingston, more than a hundred years ago, (1) that the judgment of a court of *concurrent* jurisdiction, directly upon the point involved, was conclusive between the same parties upon the same matter di-

rectly in question in another court; (2) that the judgment of a court of *exclusive* jurisdiction directly upon the point involved, was, in like manner, conclusive upon the same matter between the same parties coming *incidentally* in question in another court for a different purpose. *Rex v. Duchess of Kingston*, 20 How. St. Tr. 538. Of course, such judgments upon such questions, and between such parties and their privies, are conclusive. *Miltimore v. Miltimore*, 40 Pa. St. 151; *Caujolle v. Ferrié*, 13 Wall. 465. But in the *Duchess of Kingston's Case* the judges were equally unanimous in stating, as exceptions to those rules, that no judgment " is evidence of any matter which came collaterally in question, though within their jurisdiction; nor of any matter incidentally cognizable; nor of any matter to be inferred by argument from the judgment." These exceptions have frequently received the sanction of the courts. *Lewis's Appeal*, 67 Pa. St. 165; *Bennett v. Holmes*, 1 Dev. & B. 487; *Caujolle v. Ferrié*, 13 Wall. 469; *Brown v. Brown*, 37 N. H. 537; *Hunter v. Davis*, 19 Ga. 413; *Church v. Chapin*, 35 Vt. 224.

The complaint in the divorce suit alleged that the plaintiff and Jones were duly and lawfully married in Wales, and that he wilfully deserted her in 1868. Jones let the case go by default. The court found the allegations of the complaint to be true, and as conclusion of law that the plaintiff was entitled to a decree of divorce from the bond of matrimony, which was granted. Certainly the desertion was the principal question involved and determined therein. That question, however, is not involved in this case. Of course, the fact of marriage was incidentally cognizable. The defendant having made default, the plaintiff was not required to prove the marriage. *Fox v. Fox*, 25 Cal. 587; *Hill v. Hill*, 2 Mass. 150. But even had it been denied, the plaintiff would have made a *prima facie* case by proving the marriage ceremony at Newtown, June 13, 1864. Cer-

tainly she was not bound to go further, and prove that there were no impediments to the lawfulness of that marriage. *Harman v. Harman,* 16 Ill. 85; *Huston v. Huston,* 63 Me. 184. True, the complaint alleged that they were " duly and lawfully married." The default was a confession by Jones that they had been married, and perhaps " duly " married. But the lawfulness of that marriage could not be established by such confession, nor by the plaintiff's allegation. Being incapable of contracting the marriage relation by reason of Jones' having a former wife living at the time, they were equally incapable of establishing its lawfulness by such allegation and confession. The same inability which prevented the marriage ceremony from being effectual for any purpose, was equally potent to prevent its lawfulness being established by the declarations or confessions of either of the parties to it. The allegation in the complaint as to the lawfulness of the marriage was a mere conclusion of law from the fact of marriage therein alleged. The allegation of a mere conclusion of law cannot be treated as an allegation of an issuable fact. *Pratt v. Lincoln Co.* 61 Wis. 62. It follows that the finding of the court that each and every allegation of the complaint was true, must be confined to the facts therein stated, and cannot be extended to the conclusions of law therein alleged.

The invalidity of that marriage did not depend upon any of the facts or circumstances stated in that complaint, but upon facts wholly outside and entirely independent of anything therein stated. Since the invalidity of that marriage depended entirely upon facts *dehors* the complaint in the divorce suit, and since Jones made no answer setting up such facts or otherwise, it is evident that the validity of that marriage was not involved in that suit, and hence could not be therein determined. There is nothing in the record indicating that the court undertook to determine that question. True, as already suggested, the fact of marriage was

incidentally cognizable. The decree of divorce from the bond of matrimony presupposed the relation of husband and wife, and, consequently, a previous marriage. So the four years cohabitation presupposed a previous marriage, and the marriage ceremony presupposed the capacity to marry. But the question is whether any or all of these things precluded the plaintiff in this action from showing by facts *dehors* the divorce record that there was at the time of the alleged marriage no capacity on the part of Jones to contract any marriage with the plaintiff or any one by reason of his being at the time the husband of another woman. Of course there is an inconsistency in speaking of two persons being divorced from the bond of matrimony when in law no.such bond ever existed between them; but it is no more inconsistent than to speak of such persons being married, when in law there could be no such marriage. There was a marriage ceremony, but in law no marriage. There was in form the dissolution of such marriage, when in law none existed. The divorce record was admissible in evidence as a confession of marriage by the plaintiff, but it was not necessarily conclusive. 20 How. St. Tr. 540; *Parsons v. Copeland*, 54 Am. Dec. 628; *Halbrook v. State*, 36 Am. Rep. 17; *State v. Goodrich*, 14 W. Va. 834.

The legality of the marriage was at most a " matter incidentally cognizable " in the divorce suit, and merely " inferable by argument from the judgment," and hence was an exception to the rules of conclusiveness already mentioned. In the case in Croke; Elizabeth, cited, the defendant, a female, was sued upon a bond. She pleaded, in effect, that at the time of making the bond she was the wife of John Inglebert, who was still living, and hence that she was not bound. The plaintiff replied, in effect, that at the time of the alleged marriage Inglebert had another wife living, and that after the making of the bond there was a suit in the spiritual court between her and Inglebert wherein the mar-

riage between them was by sentence adjudged void, and to be null. This replication was held good on demurrer, on the ground that the judgment was simply declaratory of a void marriage, " and therefore there needed not any such sentence of divorce, for it was void *ab initio*, and she always sole." In the *Duchess of Kingston's Case*, one of the questions put to the judges was "whether a sentence of the spiritual court against a marriage, in a suit for jactitation of marriage, is conclusive evidence so as to stop the counsel for the crown from proving the said marriage in an indictment for polygamy." 20 How. St. Tr. 537. This question was answered in the negative. Page 544. The trial proceeded, and the lords were unanimous in finding the duchess guilty of bigamy, notwithstanding the sentence of the spiritual court, having exclusive jurisdiction, against the validity of the first marriage on the ground of nonage. Id. 623–625. This, of course, was upon the ground that the case did not come within either of the rules stated, but within the exception stated. In that case, the question of the legality of the marriage had been directly passed upon by the spiritual court, but it was not conclusive in the prosecution for bigamy. Estoppels, to be binding, must be mutual, and this doctrine is not confined strictly to mere actions *in personam*. *Chandler's Appeal*, 100 Pa. St. 262; *Gwynn v. Hamilton's Adm'r*, 29 Ala. 233; *Bradley v. Briggs*, 55 Ga. 354; *Roach v. Garvan*, 1 Ves. Sr. 157; *Burlen v. Shannon*, 3 Gray, 387. Therefore, a person who is not himself bound by a judgment cannot set it up against another.

It is difficult to see how Lewis Williams could have been bound by the divorce; and if he could not, then certainly the defendant cannot. But there is another reason why that decree of divorce is not conclusive on the plaintiff in this action. It was not instituted for the purpose of determining the validity of the marriage. On the contrary,

it assumed the validity of the marriage, and sought the dissolution thereof. The institution of such a suit naturally raised an inference of the validity of the marriage. But this inference was not strengthened by the nature of the decree rendered. In fact, the inference would have been equally strong, and even stronger, had the court denied the divorce. In such a suit, and without any allegations of fact showing the invalidity of the marriage, it would seem that the court had no authority to determine its validity or invalidity, even had it attempted to do so. The only power the court possessed to grant any divorce was such as was given by the statutes. *Barker v. Dayton*, 28 Wis. 367; *Hopkins v. Hopkins*, 39 Wis. 167; *Bacon v. Bacon*, 43 Wis. 197; *Cook v. Cook*, 56 Wis. 203.

Under the statutes, "the circuit court has jurisdiction of all actions to affirm or annul a marriage, *or for a divorce.*" Sec. 2348, R. S. When the action is for a divorce for any of the causes named in the statutes, it is necessarily upon the assumption that there has been a valid marriage, or one binding, at least, until adjudged void. But when the validity of the marriage itself is to be determined, then the action should be to affirm or to annul the marriage, and the judgment of affirmance or nullity therein is made by statute "conclusive upon all persons concerned." Secs. 2348, 2350, 2351, 2352. Such an action is in effect the old suit for jactitation of marriage. Such a suit in a case like this is unnecessary, but is provided for, and of course can be maintained. *Rawdon v. Rawdon, supra; Glass v. Glass, supra; Tefft v. Tefft, supra; Wightman v. Wightman, supra.* No such suit between the plaintiff and Jones was ever commenced, tried, or determined. The validity of that marriage could not be tried upon the complaint in the divorce suit filed by the plaintiff, and Jones' default. *Anonymous*, 15 Abb. Pr. (N. S.), 171; sec. 2886, R. S. The statutes having made a clear distinction between an action to affirm

or to annul the validity of a marriage, and an ordinary action for a divorce, it follows that an ordinary decree in such action of divorce cannot have the same effect as to the validity of the marriage as a decree in an action for affirmance or annulment. Thus it appears that the validity of the marriage between the plaintiff and Jones was never tried nor determined in the divorce suit. Certainly the validity of the marriage between the plaintiff and Williams was never tried in that suit.

The doctrine is familiar that there can be no estoppel any further than jurisdiction of the subject matter has been obtained. *Cook v. Cook*, 56 Wis. 205–218. So there can be no estoppel upon questions not determined, and upon the pleadings not determinable. As we have seen, the marriage between the plaintiff and Jones was absolutely void *ab initio*, without any judgment of divorce or other legal proceeding, and hence the marriage between the plaintiff and Williams was valid and binding. Such being the state of the case, it would be absurd to hold that the plaintiff is conclusively estopped by the subsequent judgment of divorce from showing that she was never the lawful wife of Jones, but was the lawful wife of Williams. 1 Bish. Mar. & Div. (6th ed.) § 105, and cases there cited; 2 Greenl. Ev. § 464. It follows that the plaintiff is the lawful widow of Lewis Williams, deceased, and as such is entitled to dower in the premises in question, with damages for the withholding thereof from the time of making demand therefor. *Munger v. Perkins*, 62 Wis. 499.

*By the Court.*— The judgment of the circuit court is reversed, and the cause is remanded with direction to enter judgment in favor of the plaintiff in accordance with this opinion.