[Civ. No. 6690. First Appellate District, Division One.—March 14, 1929.]

MAE BLUMENTHAL, Respondent, v. ALEXANDER BLUMENTHAL, Appellant.

A. S. Newburgh and William M. Malone for Appellant.

Heidelberg & Murasky and Joseph Edward Connolly for Respondent.

THE COURT.—This is an appeal by the defendant, Alexander Blumenthal, from a decree annulling his marriage to plaintiff upon the ground that at the time it was solemnized plaintiff was the lawful wife of one Guidice. The decree provided also for a property settlement and for the custody and maintenance of a minor child, the issue of the Blumenthal marriage. Defendant contends, as one of the several grounds urged for reversal, that plaintiff's marriage to Guidice was void *ab initio*, and that consequently her marriage to him was valid.

The state of the record is as follows: Originally the action was one for divorce instituted by Mrs. Blumenthal upon the ground of extreme cruelty. Answering, defendant denied the charges of cruelty and added a cross-complaint setting forth four separate causes of action, two for annulment of the marriage and two for divorce. In his first cause of action for annulment it was in substance alleged that at the time he married plaintiff she was the lawful wife of Guidice. Plaintiff, in a verified answer to the cross-complaint, denied "that at the time said plaintiff married said defendant herein she was the wife of Edward I. Guidice or any other person," or that at said time she "was lawfully married to said Edward I. Guidice or to any other person or at all." Subsequently and on the day of the trial, however, she filed an amended answer to the cross-complaint, which was also verified, expressly admitting "that at the time said plaintiff married said defendant she was the wife of Edward I. Guidice," and that at said time she "was lawfully married to said Edward I. Guidice." At the trial she offered no proof to sustain the allegations of her complaint for divorce, but introduced evidence to establish the charge set forth in the first cause of action of defendant's cross-complaint,

namely, that her marriage to defendant was bigamous. Before she had rested her case, defendant moved the court to dismiss the two causes of action for annulment in his cross-complaint, but the court denied his motion. After plaintiff had rested her case, defendant, in apparent contradiction of the allegations set forth in his first cause of action for annulment, sought to establish the validity of his marriage to Mrs. Blumenthal by showing that her marriage to Guidice was bigamous, and consequently void *ab initio;* and he claimed therefore that her subsequent marriage to him was legal. However, as indicated, the trial court found that at the time of the Blumenthal marriage plaintiff was the wife of Guidice, who was then living; and upon that ground the marriage between plaintiff and defendant was annulled.

The evidence bearing upon the question of the marital status of Mrs. Blumenthal at the time of her marriage to defendant consisted chiefly of the decrees rendered in the previous divorce proceedings. The facts established thereby are not disputed and summarized are as follows: Guidice, immediately preceding his marriage to plaintiff, was the husband of one Maude Alice Guidice, who, on January 9, 1905, obtained an interlocutory decree of divorce from him in Los Angeles County. Approximately ten months thereafter and on November 1, 1905, Guidice married plaintiff in the city of Napa. In 1910, he commenced divorce proceedings against plaintiff in Alameda County and on April 5th of that year obtained an interlocutory decree. Fifteen days after the entry of such decree, to wit, on April 20, 1910, plaintiff married Blumenthal in Salt Lake City, Utah.

Section 61 of the Civil Code provides: "A subsequent marriage contracted by any person during the lifetime of a former husband or wife of such person, with any person other than such former husband or wife, is illegal and void from the beginning, unless: 1—The former marriage has been annulled or dissolved. In no case can a marriage of either of the parties during the life of the other be valid in this state if contracted within one year after the entry of an interlocutory decree in a proceeding for divorce. . . . " Manifestly, therefore, under the provisions of the foregoing code section, Guidice's marriage to plaintiff was "illegal and void from the beginning," because the uncontradicted evidence shows that at the time he married her he was still the lawful husband of Maude Alice. That being

so, plaintiff never was the lawful wife of Guidice, and, if she was not, her marriage to Blumenthal cannot be annulled upon the ground that she was.

█ Plaintiff calls attention to the fact that about two months after Guidice married plaintiff his marriage to Maude Alice was dissolved by the entry of a final decree; also that approximately eleven months following plaintiff's marriage to Blumenthal her marriage to Guidice was dissolved by the entry of a final decree. But the eligibility of a person to contract marriage must be determined from the conditions existing on the date of the solemnization of the marriage and not from that which may happen afterward.

█ Therefore, neither of those decrees operated retrospectively so as to remove the legal barrier which existed at the time the parties entered into the marital state.

Plaintiff seeks to sustain the judgment of annulment upon the theory that, regardless of the actual facts relating to plaintiff's previous marital status, the interlocutory decree rendered in the divorce action between Guidice and plaintiff, and the final decree which was entered more than eleven months subsequent to the time she married Blumenthal, are conclusive against the whole world as to the validity of plaintiff's marriage to Guidice, and that consequently defendant is estopped from asserting or proving to the contrary.

█ If the present controversy were one existing between the original parties to the divorce proceeding prosecuted by Guidice against plaintiff, or between parties claiming under them, and it be assumed that as to the question of finality, an interlocutory decree of divorce shall be treated on an equality with a final decree, there would be much force in plaintiff's position, for it seems to be the general rule, with respect to final decrees of divorce at least, that as between the parties and privies a decree granting a divorce is conclusive of the existence of the marriage dissolved thereby (9 Ruling Case Law, 459, 460). Such was the situation existing in *Estate of Lee,* 200 Cal. 310 [253 Pac. 145], upon which plaintiff mainly relies. Here, however, the action is not between the original parties to the Guidice-plaintiff divorce proceeding, nor their privies, but is between one of the parties thereto and a stranger to it, and under such circumstances a different rule prevails. It is stated in Freeman on Judgments (vol. 2, 5th ed., p. 1913) as follows: ''While the

decree in a divorce suit as a decree *in rem* binds the whole world as to the status of the parties, to the extent that their status is the *res adjudicata*, with that limitation it is subject to the usual rule that estoppels must be mutual and is therefore not conclusive for or against any third person in reference to the facts which it necessarily affirms or denies. . . . As between strangers or between parties and strangers, a decree of divorce does not establish the previous validity of the marriage, since the *res* involved and adjudicated is the condition of subsequent singleness of the parties and not the valid prior existence of marital relations between them.'' (Citing *Oborn* v. *State*, 143 Wis. 249 [31 L. R. A. (N. S.) 966, 126 N. W. 737]; *Williams* v. *Williams*, 63 Wis. 58 [53 Am. Rep. 253, 23 N. W. 110].) The rule is given substantially the same in Ruling Case Law (vol. 9, pp. 460, 461), as follows: "As to third persons the decree of divorce is conclusive as to the subsequent status of the parties, viz., that from the time of the divorce they are single as to each other (citing *Belknap* v. *Stewart*, 38 Neb. 304 [41 Am. St. Rep. 729, 56 N. W. 881]; *Oborn* v. *State, supra*), but the divorce does not settle the status of their prior relations so as to render them valid or invalid as against the whole world regardless of whether they were so or not.'' (Citing *Hunter* v. *Hunter*, 111 Cal. 261 [52 Am. St. Rep. 180, 31 L. R. A. 411, 43 Pac. 756]; *Williams* v. *Williams, supra; Oborn* v. *State, supra.*) Further on the text reads: "The judgment or decree in divorce or annulment proceedings, aside from establishing as against all the world that from the time of the divorce or annulment the parties are single as regards each other, cannot be invoked by a third person in a subsequent action against one of the spouses as establishing facts which may have been or were adjudicated in the divorce proceedings. Thus, as between the party securing the divorce and a third person, the divorce is not conclusive that a marriage actually existed at the time of the divorce between the parties to the action in which the divorce was granted. (Citing *Hunter* v. *Hunter, supra*, and *Williams* v. *Williams, supra*.) . . . So also, where a woman married a man who had a wife living, and then married another man, after which she secured a divorce from the man she first married, she was held not estopped by reason of such divorce from showing that the first marriage was void and that she was a lawful wife under her second

marriage so as to be entitled to dower in her second husband's estate'' (Citing *Williams* v. *Williams, supra*). In the Hunter case the facts show that Mrs. Hunter, after having been previously married and deserted by her husband, married Hunter, and that twenty years or more thereafter she sued for and obtained a divorce from her first husband, named Milam, who had disappeared. Thereupon an action was commenced by Hunter to annul his marriage to Mrs. Hunter, and it was held that neither the complaint Mrs. Hunter filed in her divorce action against Milam, nor the decree of divorce she had obtained therein was conclusive against her as to the existence of a valid marriage with Milam. As to the legal effect of such decree the court said, in quoting from *Burlen* v. *Shannon,* 3 Gray (Mass.), 387: ''It did not establish but recognized and presupposed the relation of husband and wife as previously existing,'' and then added: ''It was conclusive against the world that the plaintiff in that suit was no longer the wife of Joseph Milam and it was an adjudication of nothing else.'' The case of *Oborn* v. *State, supra,* was to the same effect, it being there held that the divorce action, and the result thereof dissolving any marital relation between the parties, did not, as to the public generally, establish the relation of husband and wife as claimed by the parties in said action; that so far as the action was *in rem,* the *res* was the condition of subsequent singleness as to each other, and not the prior existence of a valid marital relationship.

In passing upon the point the court in the latter case used this language: '' . . . The mere treatment of the parties as man and wife in the divorce action, and judicial dissolution of their purported relations, did not make the void marriage valid. It merely established the status of the parties toward each other as judicially separated and absolved from all obligations of a marital nature existing between them.'' In other words, as said in the Williams case, there is no more inconsistency in speaking of two persons being divorced from the bonds of matrimony when in law no such bonds ever existed between them, than there is in speaking of such persons being married, when in law there could be no such marriage. The facts of the latter case relating to the marital status of the parties closely resemble those of the present one. There Mrs. Williams married a man named Jones, who at that time had a wife. Subsequently

she married Williams, after which she obtained a divorce from Jones. In her divorce complaint against Jones she alleged that they were lawfully married. The decree found the allegations of the complaint to be true, and she was granted a divorce. Later Williams died and Mrs. Williams brought suit to establish and recover her dower interest in the Williams estate. It was held that notwithstanding the adjudication in the Jones divorce decree that she was the wife of Jones, she was not estopped thereby from establishing that such marriage was in fact void, and that, therefore, her marriage to Willliams was valid.

From the foregoing we conclude that Blumenthal, being a stranger to the divorce action between Guidice and plaintiff, was not estopped by either of the decrees rendered therein from establishing the fact that plaintiff's marriage to Guidice was in fact void; and having so established such fact by uncontradicted evidence, it follows that plaintiff's marriage to Blumenthal was not bigamous and that, therefore, the decree annulling the same upon that ground is not supported by the evidence and consequently is erroneous. The conclusion we have reached on the foregoing issues makes it unnecessary to consider or determine the other points presented.

Judgment reversed.